[Decided February 4, 1887.]

3w189
3w167
3w387

3w189
5   279
5   788
13*  753
31*  867
32*  745

F. DE SAINT GERMAIN, DOING BUSINESS UNDER THE FIRM NAME OF JACOB STRAHLE & CO. v. HENRY WIND.

1. SALE — CONDITIONAL — EFFECT. — In the absence of fraud, a conditional sale, by which the title of chattels does not pass, though the possession does, is good and valid, as well against third persons as against the parties to the transaction; following *Harkness* v. *Russell*, 7 Sup. Ct. Rep. 51. LANGFORD, J., dissenting.

2. SAME — LEASE. — In connection with the agreement of sale, the parties having executed what they called a lease, in which they denominated the installments of the purchase price "rent" the true character of the transaction, as a conditional sale, is not affected thereby.

ERROR to the District Court holding terms at Walla Walla. First District.

Action to recover the possession of a billiard-table or its value. The opinion states the facts. The contract referred to therein was as follows:—

"This agreement, made the eighteenth day of October, 1882, between Jacob Strahle & Co., of the city and county of San Francisco, State of California, of the first part, and Charles Simpson, of the city and county of Walla Walla, Territory of Washington, of the second part, witnesseth, that the parties of the first part have let and leased unto the party of the second part the hereinafter described personal property, to wit: One (1) laurel inlaid centennial carrom billiard-table, style No. 6, size 4½ x 9 feet, No. 3859, slate bed, Delaney's patent cushions, complete, with all fixtures, including one poolboard and outfit, and one revolving cue-rack, packed and shipped, for the term of thirteen months from and after the eighteenth day of November, 1883, at twelve o'clock M., at and for the sum of $350, in United States gold coin, payable as follows, to wit: $50 on the delivery of these presents, and the further sum of $25 on the eighteenth day of each and every month ensuing, until the

full term of thirteen months from this date expires. And the party of the second part hereby promises and agrees to faithfully pay the rent aforesaid, in United States gold coin, at the several times hereintofore set forth, and at the expiration of said term to surrender and deliver up said property in like good order and condition as when received, reasonable wear and deterioration from proper use excepted. It is further agreed between the parties hereto that this lease shall terminate at the option of the parties of the first part: 1. In case the party of the second part shall at any time fail to pay the rent, or any part thereof, herein provided for, at the several times when the same shall become due; 2. In case the property hereby leased, or any part thereof, shall be removed from the premises wherein it is now situated without the consent of the parties of the first part in writing first had. It is also agreed that said parties of the first part shall keep the property described herein insured, during the continuance of this lease, against loss or damage by fire, in some first-class insurance company, to the amount of $250. The premium of $5 the party of the second part agrees to pay the parties of the first part.

"In witness whereof the parties have hereunto set their hands the day and year first above written.

Witness:        "JACOB STRAHLE & Co.    [SEAL]
                     "CHARLES SIMPSON.       [SEAL]

"In consideration of the sum of one dollar to us in hand paid, and of various other good considerations, we hereby agree that, in case the party of the second part to the foregoing lease shall on his part well and truly fulfill the conditions thereof, and pay when due the different installments of rents therein agreed to be paid, we will, on the eighteenth day of November, 1883, provided the said Charles Simpson shall then so desire, sell and convey the property described in the said lease to the said Charles Simpson for the sum of twenty-five dollars

in United States gold coin, then to be paid to us. It is
especially understood that time is the essence of this
contract, and that unless on the eighteenth day of
November, 1883, the condition of the said lease, on the
part of said Charles Simpson to be performed, shall have
been fulfilled, and the said sum of twenty-five dollars in
United States gold coin paid, then the privilege to
purchase hereby granted shall be waived and forfeited.

"JACOB STRAHLE & Co. [SEAL]

"SAN FRANCISCO, October 18, 1882."

*Mr. A. E. Isham,* for the Plaintiff in Error.

The question whether there has been a sale of personal
property so as to pass title is one of intent, and where
the contract is in writing the intent must be derived
from the instrument itself, unless the language is am-
biguous. (Abbott's Trial Ev., secs. 316-319; *Sanders* v.
*Keder,* 28 Ohio St. 630.) The contract set forth in com-
plaint was not a sale but a mere executory agreement
coupled with conditions precedent. Simpson had the
option to comply with it or not, and could not acquire
title to the property until he complied with the conditions
precedent. (Benjamin on Sales, secs. 92, 308–318; *Kohler*
v. *Hayes,* 41 Cal. 455; 1 Parsons on Contracts, 537.) Such
conditional sales are not in effect chattel mortgages, and
not void because unrecorded. (*Barson* v. *Dougherty,* 11
Humph. 50; *Sawyer* v. *Fisher,* 32 Me. 28.) Simpson
having acquired no title could pass none to defendant.
Having failed to comply with the conditions of the con-
tract, he lost all rights under it, and the title of the prop-
erty remained in plaintiff, although the contract was never
recorded. (*Fosdick* v. *Schall,* 99 U. S. 235; *Hutching* v.
*Canney,* 98 Mass. 198; *Boon* v. *Moss,* 70 N. Y. 465; *Singer
M. Co.* v. *Graham,* 8 Or. 17; *Truman* v. *Harden,* 5 Saw.
115; *Enlow* v. *Klein,* 79 Pa. St. 488; *Mosley* v. *Shat-
tuck,* 43 Iowa, 540; *Olney* v. *Howe,* 89 Ill. 556; *Duncan* v.
*Stone,* 45 Vt.; *Heinbuckle* v. *Zugbaum,* 5 West Coast Rep.

646; *Domestic S. M. Co.* v. *Arthewholtz,* 63 Ind. 322; *Harkness* v. *Russell,* 7 Sup. Ct. Rep. 51.)

*Messrs. Allen, Thompson, & Crowley,* for the Defendant in Error.

The instrument sued on was not acknowledged or verified as a chattel mortgage is required to be, nor was it recorded, and although ostensibly a lease, operates in fact and in law as a bill of sale and a mortgage back. Having ignored the statute relative to chattel mortgages, plaintiffs cannot recover the property from an innocent purchaser in good faith for a valuable consideration, having neither actual nor constructive notice of plaintiff's claim thereto. (Code, secs. 1987, 1988; *Harvey* v. *Rhode Island Locomotive Works,* 93 U. S. 664; *Heryford* v. *Davis,* 102 U. S. 235; *Fosdick* v. *Schall,* 99 U. S. 250; *Sladtfeld* v. *Huntsman & Co.,* 92 Pa. St. 53; *Wait* v. *Green,* 36 N. Y. 556; *Hoak* v. *Linderman,* 3 Am. Rep. 612.) The object of our registration laws is to prevent secret liens upon and claims to personal property, and render the ostensible owner and actual possessor thereof to all intents and purposes the actual owner, when the interest of innocent third persons is affected. (Code, sec. 327.)

Mr. Chief Justice Greene delivered the opinion of the court.

This is an appeal in the nature of a writ of error to review the decision of the District Court in an action for the recovery of the possession of a billiard-table or the value of it. The cause was tried by the judge without a jury; after all the evidence was in, the judge, on defendant's motion, granted a judgment of nonsuit. It appears from the record that one Simpson received possession of the table from plaintiff in error, under and by virtue of a certain written contract between them, consisting of two parts, — a lease so called, and an agreement for sale; and that while the table was in Simpson's

possession it was attached by some of his creditors, and afterwards was sold by him in consideration, among other things, of payment of the attachment debt to one Bumstead, another creditor, who received it in possesion, and then sold it to the defendant in error, an innocent purchaser in good faith, for valuable consideration.

The whole case turns upon the single question of what must be held to be the intention of the parties to the contract under which Simpson got possession. If they are to be considered as intending a contract of conditional sale, then it is conceded, and the record bears out the concession, that the nonsuit was erroneous. There is much that might be said on both sides of the question. There is great room for divergency of view, as is evidenced by the great number of decisions to be found in the reports, many of them by courts divided within themselves, and opposed towards one another, in cases very closely resembling, if not substantially identical, with the one at bar. Our conclusion has not been reached without considerable hesitancy, and is not unanimous. A majority of us, however, are unable to distinguish the determinative features of this contract from those of that in *Harkness* v. *Russell*, a case decided in November last by the Supreme Court of the United States, and reported in volume 7 of the Supreme Court Reporter, page 50. The contract in that case was held to be one of conditional sale, whereby the property in the thing to be sold was not to pass until the thing itself should be fully paid for.

We hold that the contract in this case was one for conditional sale. To call the agreement for payment of the purchase price a lease, and the installments of price as they fell due rent, was a very silly device to effect probably some end that could have been better effected in a straightforward way. It was intended, perhaps, to make appear indubitable what otherwise would have been more clear, — the will of the parties that the title

of the vendor should not be divested until the purchase price should be fully paid.

The judgment of the lower court is reversed, and the cause is remanded, with directions to open the nonsuit and let the cause proceed.

TURNER, J., concurred.

Mr. Justice LANGFORD delivered the following dissenting opinion:—

In interpreting a contract or a statute, the ultimate design is to discover the real intent of the maker. In each case the method is similar. It is human reason interpreting the human intent by human acts and words by the known laws of human nature and reason. Words are but human acts, and if used in regard to the same subject-matter by the same person at the same time, they all ought to be consistent each with the other. If they are not so, it is owing to the fact that the mind which uses them is incoherent, or that the pen has used inapt words to express the idea. As some men are presumed to intend that their words shall express consistent ideas, and the real ideas which the mind entertains, when the words express in themselves clear ideas that are consistent, the words are presumed to be conclusive as to the intent. It often happens that a statute or a contract expresses two or more inconsistent ideas. In this event, the words themselves do not show the real intent of the party who uses them. We consider the situation in which the party is placed, the probable object for which the words were used, the subject-matter to which they are meant to apply, and the purposes which the persons intended to accomplish. So accustomed is mankind to discover the real intent by reading all the words that, taking any short document as an entirety, and considering the nature of the persons and subject-matter, at first glance he can discover the real intent even when some parts, upon

a critical comparison, contradict other parts.   Thus, in
reading a contract of this kind, no person can doubt but
the parties intended an actual sale and security.   The
next thought is a speculation as to why such contradic-
tory words are used to express so simple a purpose.   He
naturally examines how people generally in the past
effected this purpose.   The law as it then was will in-
form us that such forms were not used at common law
to effect the same object; that prior to the late registry
laws the form of words used to accomplish this pur-
pose were as follows: A sells and delivers property to B
upon a promise by B to A to pay the price to A.   The
transfer having thus vested the property in B, and a
right to the price in A, B in his turn resells the property
to A for a nominal consideration, with a condition that
if he does not pay the price at the time agreed, that A
shall own the property, and in the last contract a clause
is inserted that B shall possess the property until the
time of payment of the price, and not longer.

It will be found that courts interpreted this contract
literally as a sale from B to A, and A could maintain an
action and recover possession of the property as his own.
This frequently operates unjustly in permitting B to
gain credit on property which he did not own; and sec-
ondly, that although B had paid most of the price, but
not all, he lost the property.   To cure this evil, a statute
was passed declaring that a sale without delivery was
absolutely void as to the vendor's creditors unless the
bill of sale was registered.   Under this statute, the pub-
lic were protected by the notice which the registry gave,
but the vendor who had been the original vendee often
paid most of the price, and lost the property.   To pre-
vent this injustice, the chattel mortgage acts were passed,
converting, as between the parties, what had been a per-
fect sale into a mortgage only, to secure the price.

At this stage of history the present conditional sale
sprung up.   They replaced by their terms the vendor

and vendee in exactly the same condition that they were before the registry and chattel mortgage acts were passed. The vendor again became the owner of the property and the price also, while the vendee had no right whatever until the last farthing of the price was paid, and sometimes not even then. The evil which the statute of frauds was intended to prevent was now seemingly effected. It will be seen that according to the common law the right to recover the price only vested in the consideration of the right to the property. So by the old conditional sale, in order to give the vendor the right to recover the price and avoid a *nudum pactum,* he actually sold and delivered to the vendee, passing the property. Then upon the same principles when the vendee resold, the contract of resale named a price. It was deemed that by the common law nothing was legally done unless the right to the price and the right passed, each being considered as the consideration for the other. The modern conditional sale attempts to avoid this necessary condition of the common law by inserting in the contract words to the following effect : "I have agreed to sell this property, and the vendee has obligated himself to pay the price, and I have in pursuance of said contract delivered the property, and have accepted the obligation and right to the price thereof, but I have not intended to sell the property at all. Thus the right to the price has passed, but not the right to the property, because I intend to have the right price without the concurrent necessary consideration of sale." Either this declaration of interest is void, or a man may obtain the price without consideration. The vendor well knowing that he could not have a legal right to recover the price without consideration, inserts a nominal consideration, which on its face is false, — as he will say the property is worth three hundred dollars. I deliver it upon a lease, and when the lessee has paid me the value of the property as rent, then I agree to give him the property. This

price denominated rent deceives no one, it is so evidently a sham.   No one except courts have been deceived by these sham words.   The common law still remains that the right to the price by it and a delivery of the property necessarily implies the passing of the property.   The declaration that this fixed rule of law is abrogated is against law and void.   The same necessity of a consideration exists now as it always existed.   The time when this form was first invented and the absurd expressions used all go to show that the statutes of fraud and chattel mortgages were the cause of their invention, and that they were invented for the purpose of making those statutes abortive; and if they are sustained it can only be upon the ground that the form of words can alter both the common and statute law.   In construing a written contract, each sentence should be deemed a witness.   If the idea expressed by the sentence is clear, and consistent with the other sentences and with reason, it should be believed.   If inconsistent with reason, it should not be believed.   If contradicted by other sentences, the sentences most consistent with reason and with its fellow-witnesses should be believed; those which are in conflict therewith should be discarded.   If the evidence is so conflicting that no final facts constituting a contract can be ascertained with certainty, there is no case made. The intent of parties is a final question of fact in all cases.   This final fact is to be discovered by numerous other facts which in their sum are sufficient.   These other subsidiary facts from which the final fact is to be drawn are infinitely varied and seldom alike in any two cases.   If a court finds the final fact to have been proven by the subsidiary fact, in that case this is a finding of fact, not of law.   The subsidiary facts not being exactly alike in the two different cases, it is impossible to apply any principle of law with any degree of certainty.   For these reasons I believe that as a principle of law little has been decided except that contracts should be enforced

according to the intent of the parties, provided the real intent can be discovered and the contract has a consideration. I believe that in this case the parties intended a present sale, and an obligation of the vendee to pay the price, and that a lien was intended to be created to secure the price.

I believe this as a fact from the evidence, and hence do not concur with the majority of the court.