## Ephraim K. Roberts and another v. Albert H. Wilkinson and another.

*Practice: Assignments of error: Abandonment.* Assignments of error not discussed by counsel for plaintiff in error in the brief submitted are considered as abandoned.

*Contracts: Promissory notes: Agreement to turn note upon a contract: Time: Extension.* It is competent for the parties to a building contract in writing, which provides for payment only in cash, to afterwards agree orally that the amount of a note made by the builder and held by the other party should be paid thereon by delivering up and cancelling the note, and thereafter, as soon as work enough is done under the contract to pay such note, the note in the hands of such holder would thereby be satisfied; and if the note was not due when the work was completed, the new agreement would operate to extend the time of payment on the building contract until the note matured, and the builder could not in the meantime maintain an action for the money due upon the contract; nor could he, by suspending work on his contract, defeat this new agreement to the extent of the money earned.

34 MICH.—17.

ROBERTS v. WILKINSON.

*Quantum meruit: Express contract: Payment in money.* One who by his contract is to receive payment in something else than money, cannot, where he has broken his contract, sue upon the *quantum meruit* and recover the value of the labor performed under the contract and thereby convert into cash payments what, according to his agreement, is payable in something else; the express contract is not to be disregarded in such case.

*Agreement to offset counter demands: Payment.* An agreement thus to apply money earned to the extinguishment of an obligation to the employer is one which executes itself and does not require the formality of passing the money back and forth; but these compensations, when they fairly and properly occur, are reciprocal payments.

*Promissory notes: Endorsers: Representations by holder: Payment.* Where the holders of an endorsed note which they have thus agreed to turn on their contract with the maker, have informed the endorser that work enough had been done on such contract to satisfy the note, they are bound by this statement, and in their suit upon the note against such endorser, they will not be permitted to show that the endorser lost nothing by reason of his relying upon such statement.

*Promissory notes: Endorsers: Security: Representations.* Nor would the fact that such endorser may have had security from the maker for his endorsement make any difference in his right to hold plaintiffs to their representations in this regard.

*Evidence: Immaterial matters.* Bankruptcy proceedings instituted against the maker of the note after he had abandoned his contract with plaintiffs, he not being a party to the suit on the note, were not admissible in evidence and could not affect the rights of the endorser if the note had already been paid.

*Submitted on briefs April 14. Decided June 6.*

Error to Superior Court of Detroit.

*J. G. Dickinson* and *J. P. Whittemore,* for plaintiffs in error, to the point that the declaration claimed to have been made by Roberts to Wilkinson, as to work enough having been done on the building contract to satisfy the note, was neither a payment nor release for a consideration, nor did it create an estoppel *in pais* (for in the latter aspect the question of injury from reliance upon it was expressly taken from the jury), cited: *Driskell v. Maher, 31 Mo., 325; Baker v. Briggs, 8 Pick., 122; Harris v. Brooks, 22 Pick., 195; Dewey v. Field, 4 Met., 381; Green. on Ev.,* §§ *207, 212; Carpenter v. King, 9 Met., 511, 517; Bank v. Klengensmith, 7 Watts, 523; Ruggles v. Patten, 8 Mass., 480; Smith v. Bartholomew, 1 Met., 276; Thomas v. Cleveland, 33 Mo., 126; Hadlee v. Jones, 43 Mo., 235;* and to the point that the agree-

ROBERTS *v.* WILKINSON.

ment for the future application of the money to become due on the building contract, in payment of the note in suit, was neither a present payment nor suspension of action upon the note, cited: *Moore v. Det. L. Works, 14 Mich., 266; Moore v. Paine, 12 Wend., 123; Carpenter v. Kelley, 9 Ohio, 106; Agnew v. Bell, 4 Watts, 31; Hays v. Ward, 4 J. C., 123; Story Eq. Jur.,* § *481; Lechmen v. Hawkins, 1 Esp., 626; Loudon v. Tiffany, 5 W. & S., 367; Cary v. Bancroft, 14 Pick., 317; Dehon v. Stetson, 9 Met., 341; Eaves v. Henderson, 17 Wend., 190; Flint v. Clark, 12 J. R., 374; Foster v. Trill, Ib., 456; Gardner v. Callender, 12 Pick., 374; Davis v. Spencer, 24 N. Y., 390.* An accord executory cannot be made available as payment of a promissory note, when not executed before action brought.

*Baker & Thompson* and *Alfred Russell*, for defendants in error, cited: *Eaves v. Henderson, 17 Wend., 190; Davis v. Spencer, 24 N. Y., 390; Ripley v. Ætna Ins. Co., 30 N. Y., 136, 164.*

MARSTON, J :

Plaintiffs in error brought an action of assumpsit to recover the amount due upon a promissory note dated February 13, 1875, signed by James T. Hurst and endorsed by defendants. The execution of the note, the endorsements, and all that was necessary to make a *prima facie* case, was admitted on the trial. Evidence was then given tending to show that there was then due thereon the sum of two thousand one hundred and seventy-five dollars and five cents, when the plaintiffs rested.

Defendants then introduced testimony tending to show that Hurst borrowed four thousand dollars from the plaintiffs on five or six months' time, giving two promissory notes therefor, endorsed by defendants and Mr. Barbour; that

after borrowing this money Hurst, October 12, 1874, entered into a written agreement with the plaintiffs to build them a house according to certain plans and specifications, the work to be completed on or before the first day of April, 1875. In case of any delay he agreed to pay them five dollars per day as damages, which plaintiffs might retain out of any money due and unpaid on the contract. Under this contract Hurst was to receive for his share of the work four thousand five hundred dollars: when the building was enclosed and the floors laid, fifteen hundred dollars, and three thousand dollars when the job was completed.

Defendants also gave evidence tending to prove that at the time this contract was entered into, it was orally agreed between Hurst and plaintiffs that the payments which would become due to him thereon should be paid part in cash and the remainder upon these notes; that the notes became due in February, 1875, when the building had been partly completed; that two thousand dollars of the amount then due Hurst was paid upon one of the notes which was delivered up, and the other renewed by giving the note in suit; that thirty days was the time first spoken of for which this new note should be given, but sixty days was agreed upon, as the house would be completed within that time; and that it was then agreed between Hurst and plaintiffs, that Hurst should not draw any thing on the contract until this note was paid, which was to be paid out of the moneys coming to him upon the contract. It also appeared that there was extra work done upon the house by Hurst at plaintiffs' request, amounting to six hundred and forty dollars.

It farther appeared that Hurst suspended work May 26th; that the house was not completed until July 10th; that it cost four hundred and thirty-four dollars and eighty-eight cents to complete it; that the total delay in the completion of the work was one hundred and one days at five dollars per day; that the fair rental value of the premises when completed was about one thousand dollars per annum. There

was considerable other evidence, but the above is sufficient to an understanding of the questions raised, except as more fully set forth hereafter.

This case was not argued.    In the brief submitted by counsel for plaintiffs in error the first nine pages purport to be a "statement of the case."    The remainder is devoted to a discussion of certain of the assignments of error.    We shall therefore assume that the assignments not discussed in the brief have been abandoned, and shall limit our examination accordingly.

The first question discussed, which is also the most important, relates to the charge of the court, and is covered by the eighth assignment of error.    To understand the facts upon which this portion of the charge was founded, it will be necessary to state more fully the agreement entered into at the time this note was given, as to the way in which it was to be paid by Hurst.    There was really no dispute between the parties but that at the time the note of February 13th, the one in suit, was given, an agreement was entered into between Hurst and plaintiffs, that the money which would otherwise be going to Hurst for work on the house was to be "turned" on this note as payment, and that no more money should be drawn by Hurst, upon his contract, until this note should mature and was paid, it being then contemplated that the house would be completed before this note would mature.    Of this Wilkinson had notice.

Mr. Wilkinson testified: "I subsequently (to the giving of this note) saw Mr. Roberts (one of the plaintiffs) at his bank in regard to the matter, and asked him how Hurst was getting along with the building.    Well, he said, Hurst was getting pretty well along with it, and he said at that time there was enough work done, so that if Hurst should quit there would be sufficient to pay the note at any rate.    *    * I afterwards saw Roberts in front of the Russell House.    I was driving along in a buggy one afternoon, I think it was; I asked him about how Hurst was getting along with the

building, and he said it was pretty well along, that I need not bother myself about the matter any more; it was all right."

The charge complained of upon this evidence was as follows: Counsel for defendants, after referring to this testimony, said: "I ask the court to instruct the jury that if they believe the testimony of Mr. Wilkinson in that respect, if they find Mr. Roberts did so state to him, that Mr. Wilkinson would be discharged from his liability on this endorsement, no matter how it came out as between Mr. Hurst and the plaintiffs." To which the court replied: "I think that probably is the law, and that request should be given in this way: I understand there is no real dispute between the parties as to a conversation being had, and an understanding being had, as to the application of this money at the time the contract was entered into, or about that time. One of the notes was given up, and it is alleged on one side that it was given up in pursuance of this agreement. Now, if at a subsequent period the plaintiff in this case informed Mr. Wilkinson that that was the agreement and understanding between them, and that payment had been made, so that he need pay no further attention to this note, then I think they are bound by that, if you shall believe that statement."

It cannot be doubted, even had the written contract of October 12, 1874, provided that the payments for work done upon the house should have been made in cash, and to the exclusion of their being applied upon any other claim or in any other way, but that the parties thereto could afterwards have varied or changed that agreement in that respect. They could have agreed orally that two thousand dollars, or whatever amount might be necessary, should by plaintiffs be retained in payment of this note; and should such an agreement have been made, immediately, upon work to that amount having been done, as agreed upon, the note would thereby, in the hands of the plaintiffs, have become satisfied; and it could not afterwards, by any act of plaintiffs

and Hurst, or of either of them, have been changed to the injury of the endorsers. Such an agreement, when carried out by doing the work, would, without any further act, operate as a payment of the note. If the note was not due at the time the work was done, the money would remain in plaintiffs' hands to meet it. And under such an agreement Hurst could not maintain an action against the plaintiffs for the amount earned upon the contract. By the new agreement the time of payment had been extended, and the payment appropriated for a new and special purpose, inconsistent with the right of Hurst to sue and recover. Nor could Hurst, by suspending work upon his contract, defeat this agreement to the extent of the money earned. If he could, then a party entering into a contract to do certain work, for a consideration to be paid at a certain time, after the completion thereof, or to a certain party, or to be applied upon a certain note or account upon completion of his job, could abandon the contract just before completion, when the principal part of the consideration had been earned, sue at once upon the *quantum meruit*, and if permitted to recover, thus, by his own wrongful act, defeat the intention and terms of the agreement which he had previously solemnly entered into. If such is the law, it is an inducement for parties to violate their agreements wherever they would be the gainers thereby. It is a mistake to suppose that upon a *quantum meruit*, where the plaintiff has broken his contract, the express contract is lost sight of, except as it may limit the amount to be recovered. The party who has violated his agreement can, where he has in good faith endeavored to perform, sue upon a *quantum meruit*, and recover for the work actually done, if consistent with his agreement except as to complete performance. In other words, where a party has violated his agreement, he cannot then, upon a *quantum meruit*, recover a judgment for the value of the work and labor done, and thus convert into cash payments what, according to his special agreement, were upon time, or

payable in something else than money.—*Wilson v. Wagar*, *26 Mich.*, *452.*

There being then such an agreement, which could not thus be defeated to the injury of the endorsers, upon the amount being earned it executed itself by paying the note, without any farther act of the parties.     Upon the amount being earned, it was not necessary that the formality should be gone through of plaintiffs handing the amount over to Hurst and he handing it back again.     "Each one, under such circumstances, retains in payment of what is due to him, that which he owes to the other, whether it be for the whole debt, if the sums are equal, or by deducting a lesser debt out of a greater.     These compensations, when they fairly and properly occur, are reciprocal payments."—*Connecticut Mutual Life Ins. Co. v. The State Treasurer, 31 Mich., 14.*

In view, therefore, of the legal effect of the agreement, we see no error in the charge as given upon this question. The endorser knew that the note was to be paid by work done upon plaintiffs' house.     He was interested in seeing that the work was done, in order that he might be released thereby.     When, therefore, he inquires how the work is progressing, and is informed by the holder of the note, then past due, that the work has so far progressed as to pay the note, and that he (the endorser) need not trouble himself about the matter any more, we think the holder should be bound thereby.     The effect of such information is to throw the endorser off his guard and prevent him from taking the steps he otherwise would be supposed to take for the payment of the note or his own security, and the inquiry cannot afterwards be made whether the endorser was in fact injured by the information given or not, any more than it could be in a case of a failure to protest or give him notice of the non-payment.

Suppose at the time this note became due it had been protested for non-payment, and notice thereof given the endorser, but accompanying the notice the holder had sent

a written statement that the note had been paid and that the endorser need not further trouble himself about the matter. Can it be doubted but that such a statement would have counteracted the effect which the notice of protest otherwise would have had and was intended to have, viz. : apprise the endorser of the non-payment so that he might take steps to protect himself ? I think no one can doubt but that it would, and that the holder should be bound by his statement. Now, in principle, or in the effect it would have, what difference does it make if such information was given orally by the holder, or that it did not accompany, but was given after the notice of protest ? The endorser was interested in urging Hurst to complete the building in order that the note might be paid ; the information given him was sufficient to allay and quiet his efforts in this behalf, and therefore may have prevented, through his efforts, the completion of the building by Hurst and payment of the note. If it did, the injury would be direct and palpable. Whether it did or not prevent the completion of the building, would be a very difficult question for a jury to ascertain and determine.

The fact that the endorser may have been secured, can make no difference. The securities may not have been sufficient, or he may upon receiving such notice have surrendered them up, or failed to look for additional security. Various reasons might be assigned. The fact that he was secured would not prevent his being directly interested in seeing that Hurst paid it, and the information given prevented him from so doing.

As to whether there was an agreement that the note should be paid out of the proceeds of the building was by the court submitted to the jury more favorably to plaintiffs in error than the above remarks would have warranted.

It is next objected that the court erred in excluding the offer in evidence of the bankruptcy proceedings against Hurst. The proceedings were not instituted until after Hurst had quit work upon the building, and under the above view these

34 MICH.—18.

proceedings were wholly immaterial.    They could not affect
the rights of the endorsers if the note had been paid.

It is next urged that the court erred in its instructions
as to the effect of the agreement for extra work upon the
extension of time.

It may be at least questionable whether the tenth assign-
ment, which raises this question, is not too general.    This
portion of the charge was too lengthy to repeat here, but
we think the court presented this branch of the case very
fairly to the jury, and we do not discover any error in that
portion of the charge, or in the record.

The judgment must be affirmed, with costs.

The other Justices concurred.