[No. 10475.   Department Two.   September 23, 1913.]

## SARAH K. TAYLOR, *Appellant*, v. INTERSTATE INVESTMENT COMPANY *etc. et al.*, *Respondents.*[1]

VENDOR AND PURCHASER—BOND FOR DEED—CONSTRUCTION—PRESENT SALE—VENDOR'S EQUITABLE LIEN. Where the purchaser of land paid one-third of the purchase price, gave notes for the balance, and received a bond for a deed, which covenanted for immediate possession, authorized sales by the vendee, contained no provision for a forfeiture, and did not make time of the essence of the contract, the transaction is a present sale and not an executory contract to sell, and the vendor retains title as security only, the bond creating an equitable mortgage.

SAME—VENDOR'S LIEN—REMEDIES OF VENDOR. An equitable mortgagee, under a bond for a deed evidencing a present sale without right to declare a forfeiture, cannot rescind and sue in ejectment or to quiet title, the only remedy being to foreclose the lien to satisfy the debt.

SAME—VENDOR'S LIEN—REMEDIES—ENFORCEMENT—PLEADING—COMPLAINT—TENDER. An equitable mortgagee, under a bond for a deed evidencing a present sale without right to declare a forfeiture, who mistook her remedy and sued to quiet title and recover possession, is not, for that reason, out of court, where from the facts pleaded in the complaint, it appears that she is entitled to an accounting and to a foreclosure of the lien to satisfy the debt; and it is immaterial that she did not tender a deed where the vendee remained in possession claiming payment in full; since such tender is not essential in equity where it can be provided for in the decree.

CORPORATIONS — DISSOLUTION — PROPERTY RIGHTS — CONTRACTS — ABANDONMENT. The dissolution of a corporation which was an equitable mortgagor of land, does not entitle the mortgagee to disregard the contract and recover the property in ejectment on the theory of an abandonment; since the rights of the corporation passed on dissolution to the stockholders, subject to corporation liabilities, and the antecedent contract could be enforced against the corporate property by an action in equity; especially where, with the consent of the stockholders, an agent of the corporation was still in possession of the land.

VENDOR AND PURCHASER—REMEDIES OF VENDEE—PARTIAL FAILURE OF TITLE—DAMAGES—MITIGATION. Where there was nothing due from the vendee to the vendor at the time of the foreclosure of a

[1]Reported in 135 Pac. 240.

mortgage against part of the premises which it was the duty of the vendor to pay, the vendee is under no duty to minimize the damages by paying off the mortgage or redeeming from the foreclosure sale; and the measure of damages is the value of the land lost estimated at the purchase price.

SAME—PARTIAL FAILURE OF TITLE—MEASURE OF DAMAGES. The measure of damages sustained by a vendee by loss of part of the premises by the foreclosure of a mortgage which it was the duty of the vendor to pay, is the proportionate part of the purchase price, where there was no evidence that the land lost was not as valuable, acre for acre, as the remaining lands.

Appeal from a judgment of the superior court for Klickitat county, McKenney, J., entered February 14, 1912, dismissing an action to quiet title, after a trial to the court. Affirmed.

*E. C. Ward, N. L. Ward*, and *Leroy Lomax*, for appellant.
*Bennett & Sinnott*, for respondents.

ELLIS, J.—This is an action in equity by the plaintiff against the defendants to quiet title to a tract of 1,308 acres of land, in Klickitat county. The following facts appeared from the plaintiff's evidence:

In 1890 the plaintiff and her then husband, O. D. Taylor, since deceased, sold to the defendant Interstate Investment Company a tract of 2,028 acres of land, including the land here in controversy. The price was $150,000, $50,000 of which was paid down and the other $100,000 was represented by two promissory notes of $50,000 each, drawing interest at the rate of six per cent per annum, one payable in July, 1895, and the other in July, 1900. The Taylors retained the legal title to the property, executing a bond for deed to the investment company, which provided for a conveyance of the land upon payment of the notes and for the delivery of immediate possession and full use of the property to the investment company, saving certain immaterial exceptions. Afterwards an arrangement was made between the investment company and the plaintiff's husband by which he was em-

ployed to sell town lots, platted from the property, for the
defendant, retaining from the proceeds a certain agreed com-
mission, the balance to be applied as partial payments on the
notes given by the investment company for the unpaid part
of the purchase price. Taylor was also employed to sell stock
of the investment company on similar conditions. A part of
the land was platted into lots and blocks; and between the
date of the bond and the year 1893, the plaintiff's husband
sold some of these lots and some stock of the company. Ap-
parently he did not credit the amount received from these
sales on the notes, claiming that there was little, if anything,
to be credited.

In 1891, the defendant Interstate Improvement Company
was organized, and purchased all of the interest of the Inter-
state Investment Company in this land and in the bond for a
deed therefor, thus succeeding to all of the rights of the in-
vestment company growing out of the bond and contract with
Taylor.  In 1893, the defendant Interstate Improvement
Company commenced an action in the circuit court of Ore-
gon for Multnomah county, against the plaintiff's husband,
for an accounting as to the moneys received for stock and lot
sales.  That suit remained in the court until 1902 and it was
finally adjudicated therein that the amounts received by the
plaintiff's husband for such sales aggregated over $81,000,
which sum it was decreed should be credited upon the notes
given for the balance of the purchase price, and that the
credit should be made, $40,000 as of June 1st, 1892, and $41,-
000 as of June 1st, 1893.  From this final decree, no appeal
was prosecuted by either party.

In the meantime, the defendant companies apparently re-
mained in the possession of the land, through their agents,
until early in 1906, when both companies were dissolved by
proclamation of the governor of Oregon, in which state both
companies were organized and had their situs.  Since that
time, the defendant Rorick has been in possession, save as to
certain lands sold under judicial sale for debts of the cor-

porations.  At the time of the execution of the bond for a
deed, there was a mortgage upon 720 acres of the land for
$3,500 which was held by the Oregon Mortgage Company,
bearing interest at 10 per cent; and in October, 1895, while
the suit between the defendant and the plaintiff's husband for
an accounting was pending and undetermined, the mortgage
company brought suit in Klickitat county to foreclose the
mortgage.  Neither Taylor nor the improvement company
made any defense, the mortgage was foreclosed, the land sold,
no one redeemed and the title to this 720 acres subsequently
became vested in the defendant Rorick, who has since been in
possession of it.  In 1909 the plaintiff, having succeeded to
the interest of her deceased husband, brought this action.

The foregoing facts were sufficiently pleaded in the com-
plaint, which is too voluminous to quote, and the prayer was
for possession and for quieting title.  There was also a pray-
er for general relief.

When the plaintiff had rested her case, the defendants
moved for a dismissal, which was granted.  From the judg-
ment dismissing the action and awarding costs to the defend-
ants, the plaintiff has appealed.

The appellant's theory of the action, as shown by her com-
plaint and argument, is that the transaction evidenced by the
bond for deed, the admitted first payment, and the two notes,
was an agreement to sell but not a presently operative sale.
On the other hand, the respondents claim that the transaction
was a sale, and that the legal title was retained by the ven-
dors merely as a security for the payment of the notes.  The
bond itself covenanted for an immediate and unqualified de-
livery of possession by the vendors to the vendee, authorized
sales of the property, or any part of it, by the vendee, con-
tained no provision for a forfeiture in case of nonpayment
of the balance of the purchase price, and did not declare
time of the essence of the contract.  Clearly the transaction
was a sale, with a retention of title by the vendors as a secur-
ity.  The relation of the parties was in equity analogous to

that of mortgagor and mortgagee. Though the legal title never passed, equity will regard the vendee as having acquired the property in the land, and the vendor as having acquired the property in the price.

"The vendee is looked upon and treated as *the owner of the land;* an equitable estate has vested in him commensurate with that provided for by the contract, whether in fee, for life, or for years; although the vendor remains owner of the legal estate, he holds it as a trustee for the vendee, to whom all the beneficial interest has passed, having a lien on the land, even if in possession of the vendee, as security for any unpaid portion of the purchase money. . . . The equitable interest of the vendor is correlative with that of the vendee; his beneficial interest *in the land* is gone, and only the naked legal title remains, which he holds in trust for the vendee, accompanied, however, by a lien upon the land as security when any of the purchase price remains unpaid. This lien, like every other equitable lien, is not an interest *in the land*, is neither a *jus ad rem* nor a *jus in re*, but merely an encumbrance. The vendor is regarded as owner of the purchase price, and the vendee, before actual payment, is simply a trustee of the purchase-money for him. Equity carries out this doctrine to its consequences." 1 Pomeroy, Equity Jurisprudence (2d ed.), § 368.

"The legal effect of a title bond, or agreement for a deed, is sometimes said to be like a deed by the vendor and a mortgage back by the vendee. There can be no sensible distinction between the case of a legal title conveyed to secure the payment of a debt, and a legal title retained to secure payment." 2 Jones, Liens (2d ed.), § 1108.

See, also, *Baker v. Sinclaire*, 22 Wash. 462, 61 Pac. 170; *Hester v. Hunnicutt*, 104 Ala. 282, 16 South. 162; *Bankhead v. Owen*, 60 Ala. 457; *Gilmore v. Gilmore*, 60 Kan. 606, 57 Pac. 505; *Manning v. North British & Mercantile Ins. Co.*, 123 Mo. App. 456, 99 N. W. 1095; *Graham v. McCampbell* (Meigs), 19 Tenn. 52, 33 Am. Dec. 126; *Bowen v. Lansing*, 129 Mich. 117, 88 N. W. 384, 95 Am. St. 427, 57 L. R. A. 643; *Holman v. Patterson's Heirs*, 29 Ark. 357; *Strickland v. Kirk*, 51 Miss. 795.

Under the foregoing authorities, it is plain that the vendee acquired the full equitable title, as against the vendors, and that the bond created an equitable mortgage securing the unpaid balance of the purchase price. The appellant has mistaken her remedy. She had no power to declare a forfeiture and sue in ejectment, or to quiet title. Her only relief, if she has any under the circumstances of this case, is to be found in a foreclosure of her lien and a sale of the property to satisfy the debt. In such an action only, can complete equity be done between the parties. See, also, *Fitzhugh v. Maxwell,* 34 Mich. 137; *Hendrix v. Barker,* 49 Neb. 369, 68 N. W. 531. In a proper case, an action for rescission and to recover possession might lie, but this is not such a case. The appellant and her husband having delayed action for years, and she even now making no offer to return the purchase price paid, cannot rescind the sale, there being no provision in the contract for a forfeiture of the money paid as liquidated damages.

It is plain that the appellant has mistaken her remedy; but it does not follow that she is, for that reason alone, out of court. The complaint, though asking an impossible relief, states all the facts necessary to a relief which might be possible. It states the same facts which would be required in an action to foreclose the equitable lien created by the bond and for a sale of the land to pay any balance of the purchase price which may be found due. It may be urged that the complaint is insufficient for that purpose in that it makes no offer to convey the land and contains no allegation of a tender of deed, but such an offer or allegation is not always necessary. In this case it is not an essential, since the respondents still retain the land, do not seek to rescind on their part, and claim that the purchase price has been fully paid. Any decree which might be rendered for a payment of an unpaid balance of the purchase price, if any, would of course require a conveyance of the land upon such payment. Where the decree itself will give ample protection, the antecedent formality

of tender of deed is not required in suit in equity. *Freeson v. Bissell,* 63 N. Y. 168. If, however, the complaint be treated as a bill for an accounting and foreclosure for any unpaid balance of the purchase price, the respondents must be permitted to answer and defend upon that theory. They could then interpose the defense of the statute of limitations, or any other defense which, if established, would tend to defeat the bond as a mortgage.

The appellant's contention that the two corporations, Interstate Investment Company and Interstate Improvement Company, being now dissolved in the state of their situs, that fact shows an abandonment of the contract, and that, on that theory, she can maintain an action for possession and to quiet title. The Oregon law is neither pleaded nor proved. No decree of dissolution and distribution of the assets of the corporation is claimed by either side. The dissolution of these corporations is immaterial, since whatever property rights they had would pass on such dissolution to their stockholders, subject to corporation liabilities. 3 Purdy's Beach, Private Corporations, § 1323. The appellant would have the right to treat them as still existent as to matters relating to this antecedent contract and enforce her claim against the corporate property by an action in equity. Her rights under the contract, if she now has any, are superior to those of the stockholders. The corporations have appeared and answered in this action, presumably with the consent of and as representing the stockholders. If it be true that the purchase price of the land has not been fully paid, the stockholders, who, by their failure to take any action on their own part to fully perform the contract, would hardly hereafter be permitted to question the binding force of any decree which might be rendered against the corporation with reference to this land. In addition to this, the respondent Rorick, who was placed in possession as the agent of the corporations, is still in possession, a fact which must be presumed to be

known to the other stockholders whom he claims to represent. The theory of abandonment cannot be sustained.

On the other hand, the respondents claim that the appellant's evidence shows that the whole of the purchase price has been paid, and hence the action cannot be maintained on any theory. The evidence shows that, of the $150,000 agreed purchase price, $50,000 was paid when the bond was given, and $81,000 was paid by the credits made through the decree of the Oregon court in the suit for an accounting. The evidence also shows that 720 acres of the land was lost to both parties by the foreclosure of the mortgage for $3,500 held by the Oregon Mortgage Company, which mortgage the appellant and her husband should have paid. The respondents claim that this land, being over one-third of the entire 2,028 acres covered by the bond for deed, and there being no evidence that the land lost was not as valuable acre for acre as the rest of the land, its value, measured by the contract price, should be set off and credited on that price as of the date of the mortgage foreclosure; that this would give an additional credit of $53,000 and more than discharge the balance of the debt then remaining after the admitted credits. The appellant claims that, when the $3,500 mortgage was due and unpaid, there was a duty resting upon the respondents to minimize the loss, resulting from the vendors' breach of contract, by paying the mortgage or redeeming from the foreclosure sale and charging only that amount against the purchase price; that not having done so, the measure of damages by reason of the breach is not the value of the land lost, but the amount which would have been required to redeem from the mortgage sale, and that this measures the respondents' right of set-off.

If the respondents had actually redeemed from the mortgage sale, it is certain that the amount paid for such redemption would be the measure of their right of set-off. 2 Jones, Mortgages (5th ed.), § 1504; 2 Devlin, Deeds (2d ed.), § 916. If, at the time the mortgage was foreclosed

in 1895, there had been anything then due and unpaid upon the notes from the vendee to the vendors, we would be inclined to the opinion that the measure of set-off would be the amount necessary to have redeemed from the foreclosure sale, though we have been cited to no authority so holding. But at that time, as was determined by the decree of the Oregon court in the suit for an accounting, the appellant's husband had received from sales of lots and stock for his vendee, for which he had not accounted, over $81,000, which was much more than sufficient to satisfy the first of the purchase money notes, and the second of those notes was not then due. We know of no rule, either of law or of equity, which would require the vendee in such a case to anticipate the maturity of the purchase debt and pay money not yet due from him in order to minimize damages resulting from the vendor's failure to remove an encumbrance which it was his duty to remove, especially when the vendor at the time had received money belonging to the vendee for which he refused to account. That he had then received such money and refused to account for it was determined as a fact by the decree of the Oregon court, from which he did not appeal. We have been cited to no authority, and have found none, which would sustain the appellant's claim under these circumstances. The appellant cites Rawle, Covenants for Title (4th ed.), page 293, as follows:

"In cases where the defect of title or the incumbrance has been (or could be) obtained or removed by purchase it is considered that the plaintiff is entitled to recover the amount which he has fairly and reasonably paid for that purpose, the burden of proof being upon him to show what the outstanding incumbrance or title was really worth."

We have no access to the edition cited, but a later edition of the same work omits the words which we have parenthesized, thus limiting the rule of the recovery there stated to cases of actual payment or removal of the prior incumbrance by the vendee. Rawle, Covenants for Title (5th ed.), page

275, § 192.  Under the facts as shown by the appellant's evidence, we would not be warranted in an extension of the rule beyond the amended text, which goes as far as any authority which we have been able to find.  Since there was nothing due from the vendee to the vendors at the time the mortgage was foreclosed, the vendee was under no obligation to redeem and minimize the loss caused by the vendors' default in failing to redeem.  Under the admitted facts, as between the parties here, the true measure of set-off is the value of the land lost, estimated at the purchase price.  To that extent, there was a failure of consideration for the purchase money notes.  This value, credited as of the date of the mortgage foreclosure, would have satisfied the debt, including the balance of the purchase price after the credit ordered by the Oregon decree and interest to that date.  There was no evidence whatever that the 720 acres of land lost through the foreclosure of the mortgage was not as valuable acre for acre as the 1,308 acres remaining.  On any theory of the case, the appellant has failed to prove a cause of action.

We find no error in the judgment dismissing the action. It is affirmed.

Mount, Main, and Fullerton, JJ., concur.