[No. 21016.   Department One.   March 8, 1928.]

BRIDGET AYLWARD, *Respondent and Cross-appellant,* v.
JOHN LALLY *et al., Defendants,* JAMES L.
SOUTAR *et al., Appellants.*[1]

[1] VENDOR AND PURCHASER (31)—EFFECT OF EXECUTORY CONTRACT
OF SALE.  Full equitable title vests in the vendee under a con-
tract of sale providing unconditional liability for the purchase
price and reserving no right of forfeiture except to provide, in
case of default, for sale and application of the proceeds or for
foreclosure of the contract as a mortgage.

[2] MORTGAGES (226)—FORECLOSURE—DEFICIENCY JUDGMENT AGAINST
MORTGAGOR.  Under a contract of sale constituting a mortgage
for the purchase price, the unconditional promise of the vendee
to pay the full price entitles the vendor to a deficiency judg-
ment on foreclosure, under Rem. Comp. Stat., § 1119.

[3] VENDOR AND PURCHASER (31)—EXECUTORY CONTRACT—CONSTRUC-
TION AS AFFECTING REMEDIES.  Where, on a contract for the
sale of real property, a collateral mortgage is given on other
property as additional security for the payment of the purchase
price, such collateral mortgage is foreclosable by the vendee in
case of any deficiency remaining after the application of the
proceeds of the purchase money mortgage.

[4] VENDOR AND PURCHASER (147)—ACTION FOR PURCHASE MONEY—
CONDITIONS PRECEDENT—TENDER OF DEED.  In an action by the
vendor to enforce a contract for the sale of land, upon default
before any deed was due, it is sufficient to make tender of a
deed in court, without the necessity of a tender at time of de-
claring the contract in default.

[5] APPEAL (403)—REVIEW—DISCRETION OF LOWER COURT—WHAT IS
NOT AN ABUSE.  The action of the trial court in denying relief
not prayed for in the pleadings cannot be urged as error on
appeal, in the absence of abuse of discretion.

[6] TENANCY IN COMMON (4-1)—ASSERTION BY LIEN OR CHARGE—
RENTS COLLECTED BY CO-TENANT.  In an action for the foreclosure
of a mortgage upon land held by tenants in common, one co-ten-
ant cannot enforce against his co-tenant a lien for rents col-
lected by the latter.

[7] EQUITY (39)—ATTACHMENT (1-1)—HE WHO SEEKS EQUITY MUST
DO EQUITY.  Where equity has taken jurisdiction of an action

[1]Reported in 264 Pac. 983.

for determination of the relative rights of parties, the status of the parties cannot be affected by the subsequent interposition of attachment proceedings, when to permit a preference by attachment would be inequitable.

Cross-appeals from a judgment of the superior court for King county, Kinne, J., entered April 16, 1927, upon findings in favor of the plaintiff, in an action for the foreclosure of mortgages. Modified on defendant's appeal.

*Edwin H. Flick* and *R. J. Meakim* (*H. Gordon Chute,* of counsel), for appellants.

*Murphy & Kumm, Riddell & Brackett,* and *T. N. Fowler,* for respondent and cross-appellant.

TOLMAN, J.—The plaintiff brought this action seeking, first, the foreclosure as a mortgage of an unconditional contract for the purchase of certain real estate, and foreclosure of a collateral mortgage, given upon other property to secure the performance of the terms of the contract. By her second and third causes of action she sought a recovery upon certain unsecured claims for money loaned. During the pendency of the action, she caused a writ of attachment to be issued upon her second and third causes of action, and levied upon the real estate covered by the collateral mortgage. The collateral mortgage, by its terms, covers an undivided half interest in the lands therein described, and the defendants Soutar and wife were the owners of the other undivided one-half; hence the necessity for making them parties defendant.

By answer and cross-complaint the Soutars set up their interest in the land covered by the collateral mortgage, admitted the one-half interest in Lally and wife, and averred that certain advances had been made by them by way of paying Lally's part of the purchase price of one of the properties, paying taxes and assess-

ments and for betterments, and further alleged that
Lally had collected and retained considerable sums as
income from these properties in excess of the sums so
received by the Soutars, of which, it was alleged, the
plaintiff had notice. And, in effect, it was sought
by this cross-complaint to have all sums so due the
Soutars declared an equitable lien upon the Lally inter-
est in the land prior and superior to the lien of the col-
lateral mortgage.

The trial court made exhaustive findings of fact,
none of which is seriously questioned here, and entered
a decree directing the foreclosure of the contract as a
mortgage upon the property therein described, denying
a deficiency judgment, and denying foreclosure of the
collateral mortgage. The plaintiff's attachment lien
was established and the property attached directed to
be sold by the sheriff, subject to certain equitable liens
adjudged to the Soutars. The Soutars were denied a
lien, though awarded a judgment against Lally for the
overplus of rents collected, and allowed a lien for cer-
tain advances. From the decree Soutar and wife have
appealed, and the plaintiff has cross-appealed. Lally,
although he defended below, has not appeared in this
court, either as an appellant or as a respondent, to
defend those provisions of the decree which are favor-
able to him.

The plaintiff, by her cross-appeal, raises the inde-
pendent question of her right to enforce the collateral
mortgage, and since all other questions can be dis-
cussed and decided on the appeal of the Soutars, we
will first consider, under the cross-appeal, the question
of the enforceability of the collateral mortgage.

To a clearer understanding of this question and of
the questions later to be discussed, we think it well to
set forth the conclusions of law made by the trial court,

which, so far as they affect the questions now before us, are as follows:

"I. That the above entitled plaintiff, having elected to foreclose her real estate contract, is not entitled to any relief under the mortgage referred to and described herein, dated December 20, 1922, and that the said defendant John Lally is entitled to a decree cancelling and annulling the said mortgage of record.

"II. That the said plaintiff is entitled to a decree herein fixing the amount unpaid on said real estate contract as the sum of Thirty-nine Thousand Nine Hundred Eighty-six 43/ ($39,986.43) Dollars, interest figured to the date hereof on the respective amounts set forth in the foregoing Findings, which includes the bank's mortgage upon said premises, and is entitled to have said mortgage to the Washington Mutual Savings Bank established as a first, prior and paramount lien upon said lands and premises, and to have said decree provide that the same may be sold subject thereto.

"III. That said plaintiff is further entitled to have said decree provide that the balance unpaid on account of said contract (after deducting the amount of said mortgage, to-wit: $7,000) be established as a first, prior and paramount lien upon said lot and parcel of land, subject only to the said mortgage of $7,000; and to have a decree foreclosing her lien for said amount, and said lands and premises sold by the Sheriff of King County, State of Washington in the manner provided by law for the sale of real property upon mortgage foreclosure; and to have said decree provide that the said Sheriff shall issue to the purchaser thereat a Sheriff's Certificate, and to let the purchaser thereat into the immediate possession of said premises so sold, and to further provide that said plaintiff may become a bidder at said sale and use the amount of her judgment herein for the purpose of bidding and that the proceeds of said sale be applied, first, to the payment of the costs thereof, to the costs of this action, and to the satisfaction of said lien, and as to the amount under said contract said plaintiff is entitled to no defi-

ciency judgment against the said defendant John Lally, or the said defendant Lenora Lally his wife.

"IV. That said plaintiff is further entitled to a money judgment against the said defendant John Lally on account of the money found due in Findings XV and XVII in the sum of Four Thousand One Hundred Fifty Seven 30/100 ($4,157.30) Dollars.

"V. That said plaintiff is further entitled to a decree establishing her attachment lien upon the said lands and premises so attached, as a first, prior and paramount lien against said defendants and each of them, and all persons claiming by, through or under them or any of them, except as to the lien of said defendant James L. Soutar as hereinafter defined, and to have said lands and premises sold to pay the amount of said attachment lien, which decree shall be in the usual form.

"VI. That the defendants James L. Soutar and Ida Soutar, his wife, are entitled to an equitable lien upon the respective parcels of land in which they are co-tenants with the said defendant John Lally for the taxes paid and the improvements made by them, in the amounts above stated, allocated to the respective properties, which lien is prior and paramount to the attachment lien in favor of said plaintiff.

"VII. That the said defendants James L. Soutar and Ida Soutar, his wife, are entitled to a general judgment against their co-defendant John Lally for their proper portion of the rentals and insurance upon said Lot 19, Block 9, Hill Tract Addition to the City of Seattle and Lot 4, Block 3, Wardell's Madrona Park Addition to the City of Seattle, and are entitled to a general judgment against the said defendant John Lally and Lenora Lally his wife, as a marital community, for excess rentals and money advanced by the said defendant Soutar for insurance on account of Lot 3, Block 5, Colligan & Coryell's Addition, towit: and that the said defendants Soutar are entitled to a judgment in their favor and against the said defendant Lally for their costs and disbursements in this action, with interest on yearly balance."

2—147 WASH.

[1] Is the collateral mortgage foreclosable to cover any deficiency which may remain after the application of the proceeds of the sale of the principal security? The contract, by its terms, provides that the seller will sell and the buyer will buy, that the purchase price is the sum of $37,000, every dollar of which the buyer binds himself to pay in accordance with the terms fixed by the contract, in the following language:

"The party of the second part hereby promises, covenants and agrees to make all the payments as herein provided and to fully perform said contract and upon the full performance of this contract by the party of the second part, the party of the first part will execute to the party of the second part a good and sufficient deed to said premises conveying to him a merchantable title.

"Time is the essence of this contract, and in case of failure on the part of the party of the second part to make any of the payments or perform any of the covenants on his part to be performed, the party of the first part may declare an immediate default of the party of the second part in the performance of this contract, and shall be entitled to the immediate possession of said premises and the whole and every part thereof, and is hereby empowered and given the right to sell the said lands and premises at public or private sale to other parties and to apply the proceeds of such sale to the payment of the purchase price as herein fixed and in addition thereto is hereby given and reserves the right to foreclose the mortgage given by the party of the second part to the party of the first part as of even date herewith to satisfy any amount or amounts which the party of the first part would be entitled to receive under the terms of this contract, it being agreed and understood that said mortgage is given as security for the performance of this contract."

The remaining provisions of the contract, with reference to the payment of taxes and assessments, the carrying of fire insurance, and to keeping the building in good repair, and the like, are such as may properly

be and usually are contained in the ordinary mortgage. Forfeiture is not mentioned in the contract, and the provision for a default which has been quoted is the only right accorded the seller, if payments are not made as provided.

These facts undoubtedly bring the case within the rule announced in *Taylor v. Interstate Investment Co.,* 75 Wash. 490, 135 Pac. 240, where it was said:

"Clearly the transaction was a sale, with a retention of title by the vendors as a security. The relation of the parties was in equity analogous to that of mortgagor and mortgagee. Though the legal title never passed, equity will regard the vendee as having acquired the property in the land, and the vendor as having acquired the property in the price. [Quoting and citing authorities.]

"Under the foregoing authorities, it is plain that the vendee acquired the full equitable title, as against the vendors, and that the bond created an equitable mortgage securing the unpaid balance of the purchase price."

This doctrine was reaffirmed in *Roy v. Vaughan,* 100 Wash. 345, 170 Pac. 1019, and *Barton v. Tombari,* 120 Wash. 331, 207 Pac. 239. To the same effect, also, are the early cases of *Shelton v. Jones,* 4 Wash. 692, 30 Pac. 1061, and *St. Paul & Tacoma Lum. Co. v. Bolton,* 5 Wash. 763, 32 Pac. 787.

No one of these cases is referred to or overruled by the prevailing opinion in *Ashford v. Reese,* 132 Wash. 649, 233 Pac. 29, and the conclusion is irresistible that the doctrine of that case, and the prior cases upon which it is based, is limited to those contracts which by their terms are forfeitable, and we now so hold.

[2] Treating the contract, then, as a mortgage, it clearly appears that, both in the mortgage proper and in the collateral mortgage, there is an express agreement for the payment of the sum of money secured, and

the case is thus directly within the terms of our statute, Rem. Comp. Stat., § 1119 [P. C. § 8204], which reads: .

"When there is an express agreement for the payment of the sum of money secured contained in the mortgage or any separate instrument, the court shall direct in the decree of foreclosure [or order of sale] that the balance due on the mortgage, and costs, which remain unsatisfied after the sale of the mortgaged premises, shall be satisfied from any property of the mortgage debtor."

The case of *Barton v. Tombari, supra,* which might, on a cursory reading, seem to hold differently as to the right to recover a deficiency, has been considered and construed in *Stevens v. Irwin,* 132 Wash. 289, 231 Pac. 783, and the latter case supports our present view.

[3, 4] But it is said that a deed should have been tendered at the time the default was declared. The default was based upon the failure to pay some of the comparatively early and intermediate instalments, and had those instalments been paid, Lally would not have been entitled to a deed. There may likewise be a difference, in some instances, between declaring a default and declaring a forfeiture. That we need not now determine. A deed was tendered into court, to be delivered when the whole amount secured by the contract and the mortgage was paid. Since under the terms of the contract the purchaser was entitled to a deed only when the full payment was made, we think this tender sufficient; especially as it also clearly appears that an earlier tender of the deed would have availed nothing, as Lally could not have paid except by a fortunate sale of the property, and apparently, before the tender, the plaintiff used her best efforts to find or assist in finding a purchaser.

There is nothing in the provisions of the contract which, by reason of default expressly accelerates the

maturity of any subsequently accruing payment, but it does provide that in the event of sale, either public or private, the proceeds shall be applied to the payment of the contract purchase price, and that upon the foreclosure of the collateral mortgage the proceeds of such foreclosure shall be applied "to satisfy any amount or amounts which the party of the first part would be entitled to receive under the terms of this contract, . . ." No payment of overdue instalments was tendered so as to invoke the application of Rem. Comp. Stat., § 1126 [P. C. § 8207]. We think none of our cases where the failure to tender a deed was held fatal has any application here.

Something was said in argument to the effect that the trial court denied the deficiency judgment and the foreclosure of the collateral mortgage by reason of some fact found. We can discover in the record no finding of fact which can possibly bear such a construction, and nothing in the evidence upon which such a finding might be based.

But for what appears to have been a waiver of that right during the course of the trial below, the plaintiff would have been entitled to a straight deficiency judgment in accordance with the terms of the statute.

We conclude that the plaintiff is entitled to foreclose the collateral mortgage and have the property so pledged sold to cover any deficiency remaining after the application of the proceeds of the sale of the property described in the contract.

[5] The defendants Soutar raise three questions by their appeal. First, that the trial court erred in not granting a partition of the property held in common by the Soutars and the defendants Lally. The cross-complaint did not contain the necessary allegations to support a prayer for partition and no such

relief was prayed for, though there was a prayer for general relief. It is probable that some necessary parties were lacking. The case was not tried on the theory that a partition was to be had, and not until near the close of the trial was partition even suggested. We cannot say, under these conditions, that the trial court abused his discretion in then refusing to consider the application.

[6] The second question is based upon the contention that the Soutars should have been awarded an equitable lien superior to the rights of all other parties upon the undivided Lally interest in the common property, not alone for taxes paid and the like (which were so allowed), but also for the amount of the indebtedness arising in favor of the Soutars by reason of the collection by Lally of more than his share of the rent. So far as appears, the Soutars voluntarily permitted Lally to collect and retain from the income of the common property a considerable sum of money in excess of his share. There was nothing in the relation of the parties, as owners in common, which required them to consent to that course of conduct and no reason why, at any time, they might not, by proper action, have stopped the practice. From the standpoint of equity, it seems to us like any other debt that Lally might have contracted upon the strength of his moral and financial worth. It is undeniably the rule that, in an action for an accounting between co-owners, such an excess can be recovered, and in an action for partition the excess may be declared an equitable lien upon the interest of the one at fault. There seem to be some cases which have upheld such a lien, even when the rights of third parties have intervened. *Beck v. Kallmeyer*, 42 Mo. App. 563. But we think the general rule, and the one best supported by both reason and authority, is against the allowance of a lien in such a

case when the rights of third parties will be adversely affected. This rule is well stated in 7 R. C. L. 836, § 32, which reads:

"It ought not to be held on principle that any lien or incumbrance arises in favor of one cotenant against the share or interest of another in the land for rents due. Such liens would be indefinite in amount, and undisclosed by public records, upon which third persons in dealing with the owners of property ordinarily have a right to rely. They would greatly injure tenants in common by impairing the market value of their interests, because of the apprehension on the part of persons contemplating the purchase of such interests, or otherwise dealing with them, that claims for rents might be established as superior liens. There are many authorities holding that no such liens exist. But the rule has been laid down that, as among the parties themselves, the court in decreeing partition has the power, in doing full justice in the premises, to adjust all demands for rent, and require the amount found due to be settled from the share of the proceeds of the sale of the property coming to the cotenant owing the rent. This rule is not objectionable, as creating a secret, indefinite lien, to the prejudice of those persons dealing with the owners of the property, and, therefore, it is not opposed to the rule that no such lien exists. The reason for this view is that the increase or rent is common property as much as the principal or the original estate. Therefore, when one takes of the increase or rents he takes a part of the common fund or property, and it may well be said that there is on his part an implied agreement to have what he has received applied on his share, or that on division he will bring it in, to the end that it may be charged to him on division. A court of equity works out this result, it is said, through the operation of an equitable lien. The rule is well settled that any claim which a tenant in common may have against his cotenant's interest for rents and profits received by him, whether or not the claim constitutes a lien, is subordinate to the rights of third persons, either as lienors, pur-

chasers, or otherwise; although in some jurisdictions priority is given to the lien of a cotenant as against a mortgagee of the lienee.''

See, also, 2 Thompson on Real Property, § 1848; *Tedder v. Tedder,* 123 S. C. 346, 116 S. E. 436; *Stenger v. Edwards,* 70 Ill. 631; *Flach v. Zanderson,* 91 S. W. (Tex. Civ. App.) 348; *Hannan v. Osborn,* 4 Paige 336.

[7] The third question has to do with the sustaining of the attachment sued out by the plaintiff on her causes of action for money loaned and the establishing of the attachment lien as prior to the claim of the Soutars for rents collected by Lally. The action had been some time pending. The issues were made up, indicating that the Soutars were claiming an equitable lien for the excess of rents collected, and the cause proceeded to trial on the merits on November 30, 1926. Thereafter, and during the course of the trial below, on December 11, 1926, the plaintiff filed her affidavit and bond for attachment, and the writ was issued and levied on that day. It is true that the statute (Rem. Comp. Stat., § 647) [P. C. § 7379] says, in effect, that a writ of attachment may be issued at the time of commencing an action or at any time afterward and before judgment, and in an action at law the statute must govern.

But here we have an action which sought, as its main purpose, equitable relief, and the legal demands were included only to avoid a multiplicity of actions. Equity had taken full jurisdiction of the issues raised and was proceeding to determine the rights of the parties with all due expedition. Is it equitable to permit one party, by invoking a purely legal process, to change the status of the parties at that late day and thus secure a preference? While under our state law preferences are permitted and equity will recognize a legal preference which has become fixed before

the action is brought, yet we think here, where the plaintiff brought her legal rights into an equitable action voluntarily and submitted them to the chancellor as a part of her action for equitable relief, she ought, in equity, to be required to have her rights determined as of the time she so submitted them. ''He who goes into equity must do equity.'' And we think it would be inequitable, under the peculiar facts of this case, to permit a preference by attachment.

Therefore, the decree must be so modified as to place the amount allowed to the Soutars as a general judgment on an equality with the plaintiff's claim by attachment.

We conclude that, on the appeal of the Soutars, the decree must be modified so as to place their judgment against Lally on an equality with the plaintiff's judgment; and on the cross-appeal, it must be further modified by providing that the collateral mortgage be foreclosed, and that the property described in the contract be offered and sold separately, and if it bring insufficient to pay the amount found due, that the property described in the collateral mortgage be then sold to make up the deficiency.

Except as so modified, the judgment appealed from is affirmed.

Each party having to some extent prevailed on his appeal, neither will recover costs against the other.

Mackintosh, C. J., Parker, and Mitchell, JJ., concur.

French, J., concurs in the result.