[No. 27463.   Department One.   August 14, 1939.]

WADE H. DEAN *et al., Respondents,* v. RALPH E.
WOODRUFF *et al., Appellants.*[1]

*Ward & Ward* and *Clark & Grady,* for appellants.

*McEwen & Brooks,* for respondents.

BLAKE, C. J.—This is an action by the vendees under
a contract for the sale of real estate for abatement of a
part of the purchase price because of the destruction

[1]Reported in 93 P. (2d) 357.

by fire of buildings on the premises during the life of the contract. The action is brought upon the theory that the contract contained a forfeiture clause; and that, under the rule of *Ashford v. Reese*, 132 Wash. 649, 233 Pac. 29, the loss occasioned by the destruction of the buildings must fall on the vendors. The defendants, on the other hand, contend that the contract did not contain a forfeiture clause; that, therefore, under the rule of *Taylor v. Interstate Inv. Co.*, 75 Wash. 490, 135 Pac. 240, and *First Nat. Bank v. Mapson*, 181 Wash. 196, 42 P. (2d) 782, the vendees obtained an equitable title; that, since the basis of the rule of *Ashford v. Reese* is that loss follows title, the loss in this instance must fall on the vendees. The vendors also claim that the fire was the result of negligence on the part of the vendees. The court entered a decree in accord with the contentions of the plaintiffs. Defendants, the vendors, appeal.

The appeal, with one exception, raises only questions of fact. Indeed, in finality, the question to be determined turns upon the credibility of the appellant Woodruff and the respondent Dean. For counsel are agreed that, under the rules of the above-cited cases, if there was a forfeiture clause in the contract, the loss must fall on the vendors unless the fire was the result of the vendees' negligence; and if there was no forfeiture clause, the loss must fall on the vendees.

The question of negligence may be summarily disposed of. While the court made no findings of fact, its decree, by necessary implication, presupposes that the vendees were free from negligence. Without discussion, we may say that we think the evidence on that issue would warrant no other conclusion.

To determine whether the parties agreed to a forfeiture in the event of default on the part of the vendees, requires a somewhat detailed statement of the

transaction. Although there were two writings signed by the parties in connection with the transaction, we are satisfied that the contract essentially rested in parol. For, as we shall see later, one of the writings was obviously incomplete and the other was merely an escrow agreement.

The subject of the contract was a 120-acre tract, upon which there was a considerable stand of timber, a dwelling, and ranch buildings. The appellants had purchased it some years before from one Wang on a contract upon which there was still five hundred dollars due. Appellants and respondents consummated their deal on July 14, 1936. The terms of their contract with respect to payment and an escrow arrangement, subsequently effected, were reduced to writing. The agreed purchase price was $2,300, $250 of which was payable in cash. The balance was represented by four notes: One for $250, payable October 20, 1936; one for $700, payable May 1, 1937; one for $500, payable August 1, 1937; and one for $600, payable February 1, 1938. This writing referred to three instruments to be placed in escrow: (1) A deed, (2) special use permit for forest service, (3) assignment of shares in a water association; and recited that these instruments were "to be returned in case of default." The contemplated escrow agreement was executed July 23, 1936. The deed, put in escrow, was one executed by Wang and wife with the name of the grantee to be filled in. If respondents made the payments specified, the deed was to be delivered to them. In case they failed to make the payments, the deed and other papers were to be delivered to appellants. While, by the terms of the escrow agreement, it would appear that the notes were also delivered to the escrow holder, they were in fact delivered to appellants at that time. The escrow agreement contained the following:

"That Ralph E. Woodruff, or his representatives, shall have the right to cancel this agreement for non-payment should payment not be made as herein specified, provided however, they shall give Wade H. Dean and Effie M. Dean thirty days notice, with copy to escrow holder, of their intention to cancel for nonful-fillment of this contract. And in the event that the delinquency is not taken care of within said thirty days, the said escrow holder shall on demand deliver all of said papers to Ralph E. Woodruff, or his representatives."

No controversy arose until about the time the $700 note became due. That note was not paid on its due date, May 1, 1937. Whether this was the result of inability of respondents to pay it then or the controversy which arose over who should bear the loss occasioned by the fire, is not clear.

The parties do not agree as to the date of the fire. Respondents say it occurred May 3rd or 4th. Appellants fix the date as June 2nd or 3rd. In any event, the $700 note was not paid until after the fire. In the meantime, respondents were insisting upon some abatement in the purchase price, which appellants refused to consider. Respondents paid the $500 due August 1, 1937, though still insisting that they were entitled to some adjustment on the purchase price. Before the last note, for $600, became due, respondents commenced this action.

The cause came on for trial on May 10, 1938. As we read the record, the respondents rested their theory of a forfeiture clause solely upon the above-quoted provision of the escrow agreement. That that provision is not such as would permit the vendor upon default of the vendee to cancel the contract, retake the land, and retain payments made by the vendee, we think is apparent. And, by implication, at least, counsel for respondents concede that it is not.

For, while the court had the cause under advisement, respondents filed a petition to reopen the case for the purpose of taking additional testimony. The petition was granted, and additional evidence was presented. The additional evidence consisted of the testimony of the respondents, the appellant Woodruff, the escrow holder, and two letters. Only one of the letters has any significance. It was from appellant husband to the escrow holder giving notice of intention to cancel the contract. The testimony of the escrow holder is quite noncommittal, but its purport is to the effect that Woodruff was asserting his right to cancel the contract and withdraw the deed and other papers.

It is the testimony of respondent Dean and appellant Woodruff given on this second hearing that led us to say, in the beginning, that, in final analysis, the issue as to whether or not the parties agreed to a forfeiture must turn upon their credibility as witnesses. For both Dean and Woodruff grasped, with singular adeptness, the legal consequence of the presence of such a stipulation on the one side and its absence on the other. Dean on the one hand testified that he wanted to consummate the transaction by taking a deed and giving back a mortgage, but that Woodruff insisted on retaining title and the right to cancel upon default and retain payments received. In other words, Dean's testimony brings the case within the rule of *Ashford v. Reese, supra.* Woodruff, on the other hand, testified just as directly and positively that no forfeiture was contemplated or agreed to; that he retained the legal title simply to secure the purchase price. In other words, under his testimony, the equitable title passed to Dean when the contract was entered into.

There are inferences and probabilities to be gleaned from the record in support of both versions. It will serve no useful purpose to weigh them here.

It is impossible for us upon this record to form an independent judgment as to where the truth lies. In a situation such as this, so much depends, in ascertaining the truth, upon the comparative candor and disingenuousness of the witnesses while they are on the stand that only the trial judge, who sees and hears them, can draw an accurate conclusion. There is no tangible evidence in this record which would justify us in arriving at a different conclusion than that reached by the trial judge on this issue.

■ Appellant assigns as error the admission of the testimony relating to the forfeiture feature of the contract. Objection to the testimony was based on the theory that the writing of July 14th, coupled with the escrow agreement of July 23rd, constituted a complete, unambiguous, written contract, which could not be supplemented by parol evidence. The objection, we think, is without merit. The writing of July 14th does not purport to cover the entire agreement between the parties. It does not even contain a description of the land except as "120 acres known as the Wang place." Nor can the escrow agreement be construed as the contract of sale. Naturally, there were recitals in it embodying certain features of the contract theretofore consummated by the parties. But these were simply incident to the main purpose of the escrow agreement. They were incorporated to enlighten the escrow holder in carrying out the obligations he assumed as such.

The judgment is affirmed.

JEFFERS, STEINERT, MAIN, and ROBINSON, JJ., concur.