[No. 570.   Decided November 30, 1892.]

BARNEY QUINN, *assignee of E. P. Hamilton, Respondent,* v. THE PARKE & LACY MACHINERY COMPANY, *Appellant.*

REPLEVIN—VERDICT—CONDITIONAL SALE—WAIVER—EVIDENCE—
INSURABLE INTEREST.

Under Code Proc., § 374, requiring the jury, in an action for the recovery of specific personal property, to "assess the value of the property if their verdict be in favor of the plaintiff," a verdict is defective which merely finds for the plaintiff and assesses his damages at fifteen hundred dollars.

Where a contract provides that certain chattels shall be leased by one party to another for a definite period, for the use of which the lessee agrees to pay certain sums at stated times, upon the performance of which provision he shall be entitled to purchase the chattels for the sum of one dollar, but in case of his failure promptly to comply with the terms of the contract the same shall be canceled and all money paid shall belong to the lessor as payment for the use of the property, which the lessor shall be entitled to retake into its possession, such contract, although described as a "lease," is a conditional sale.

The fact that the lessor accepted payment of money upon such a contract after maturity, and after the lessee was in default, did not constitute either an express or implied waiver of the terms of the contract; and a mere lapse of time after default of the lessee before the lessor resumed and took possession of said chattels, did not constitute a waiver of the lessor's title and right to the possession of said property.

A charge to the jury that if the lessor insured the chattels in the name of the lessee it is *prima facie* proof of the lessee's ownership

of the property, is erroneous, as the person in possession of property under a conditional sale has an insurable interest, which is not inconsistent with the title of the actual owner.

*Appeal from Superior Court, Spokane County.*

*Fenton & Fenton,* and *D. W. Henley,* for appellant.

*Feighan, Wells & Herman,* and *W. M. Ridpath,* for respondent.

The opinion of the court was delivered by

DUNBAR, J.—On June 30, 1890, appellant entered into a written contract for the sale or lease of the machinery in controversy, with the firm of Humphrey & Hamilton.    The following is the instrument executed:

"The Parke & Lacy Machinery Company, of Spokane Falls, lessors, hereby lease unto Humphrey & Hamilton, of Deer Park, Washington, lessee, the following property for the period of six (6) months from the 30th day of June, 1890: One Phœnix horizontal engine, class B, size 9½x12, 2½-inch steam pipe with bandwheel and flywheel of engine 1,231; one portable boiler, 4,903, made by T. M. Nagle, Erie, Penn., with all fittings for said engine and boiler; 60 feet of 12 inch 4-ply rubber belting.

"Said property is to be used only at or near Colletta, Spokane county, Washington, and said lessee agrees to pay said lessors at Portland, Oregon, for the use of said property, the sum of fourteen hundred and forty-seven dollars, payable as follows: $747.00 July 30, 1890; $700.00 on Dec. 1, 1890, with interest on the deferred payments at ten (10) per cent. interest per annum from date.

"Said lessee agree that we will pay the rent at the times and in the manner aforesaid; that we will not permit said property, nor any part thereof, to be affixed to real estate, nor remove from where it is to be used aforesaid, nor deliver the same to any one, nor suffer it to be taken away by any one except lessors. nor in any manner transfer; or attempt to transfer, this lease, or any interest therein, or in said property, without the written consent of lessors; that they will keep said property in good condition and repair,

and pay all expenses relating to said property hereinafter incurred, including transportation and insurance thereof, in the name of lessors and all damages to said property suffered by lessors.

"It is further agreed that time is the essence of this agreement, and that upon the failure of the lessee strictly to keep and perform any of the covenants or provisions hereof by them agreed to be performed, then, and thereupon, without any notice, this instrument shall be deemed to be canceled and of no further effect as against lessors, and all right and interest of lessee in or to said property shall cease, and all rent by lessee theretofore paid shall belong to lessors as full payment for the prior use of said property, and lessors shall be entitled to take into their possession all said property.

"Said lessors further agree that upon strict performance by lessee with all the foregoing covenants and provisions by them to be kept and performed, they shall then (but not otherwise) have the right to purchase said property by the prompt payment to lessors of the sum of one dollar."

It is claimed by appellant that Humphrey & Hamilton went into possession of the said property under the terms and provisions of the said written instrument.    It is, however, claimed by respondent that after the execution of the written instrument called a lease, a new and distinct contract was entered into between the parties, and that an absolute sale was made of the property, and that at the time respondent took possession of said property the same had been paid for in full.    Through transfers and assignments the property finally passed into the hands of Barney Quinn, assignee of E. P. Hamilton, an insolvent debtor, who was successor to Humphrey & Hamilton.    According to the contention of the appellant, on July 5, 1891, only $666 had been paid on said contract, and after notifying respondent to pay the balance, and his refusal so to do, appellant took possession of said property as provided for by the terms of the lease.    Respondent thereafter brought his action for the recovery from the appellant of possession of

the property.   The complaint sets out the ordinary allegations in replevin, viz., the demand for delivery, the refusal, the value of the property, which is alleged to be fifteen hundred dollars, and avers damages by reason of the wrongful taking and detention in the sum of one thousand dollars, prays judgment for the possession of the property, and, if a return thereof cannot be had, for the value thereof, viz., fifteen hundred dollars, and for one thousand dollars damages, costs, etc.   The verdict was as follows: "We, the jury, in the case of [ title omitted ], find for the plaintiff, and assess his damages at fifteen hundred dollars." The verdict was excepted to by the appellant as not conforming to the provisions of § 374 of the Code of Procedure, and is one of the errors urged here for the reversal of the judgment founded upon it.   This question was examined at some length by this court in *Meeker v. Johnson*, 3 Wash. 247 (28 Pac. Rep. 542), and the decision announced in that case is decisive of the point raised here, and for this error the judgment must be reversed.

But on the probability of a new trial it is proper that we should notice the other errors alleged which are liable to be repeated.   So far as the written contract is concerned, which is termed a lease in this case, it has been held by the supreme court of Washington Territory in *De Saint Germain v. Wind*, 3 Wash. T. 189 (13 Pac. Rep. 753), and in *Dodd v. Bowles*, 3 Wash. T. 383 (19 Pac. Rep. 156), that this kind of a contract, though termed a lease, was in reality a conditional sale, and that, in the absence of fraud, a conditional sale by which the title of chattels does not pass, though the possession does pass, is good and valid as well against third parties as against the parties to the transaction.   These cases follow the doctrine announced by the supreme court of the United States in *Harkness v. Russell*, 118 U. S. 663 (7 Sup. Ct. Rep. 51), and we think the great weight of modern authority

sustains that view.   This proposition is not very stoutly disputed by the respondent, though he asserts that both the paper itself and the conduct of the parties after the transaction lead to the conclusion that the paper was intended as a lease or mortgage, rather than a contract or conditional sale.   So far as the instrument itself is concerned, conceding that the parties have a right to make this kind of a contract, its terms cannot well be misunderstood, and language could not be employed that would more plainly express the intention to forfeit all the rights of Humphrey & Hamilton in case the conditions were not complied with within the time specified.   And the fact that the machinery company had the contract recorded can certainly not be taken against them.   The very fact that these conditional sales are generally not recorded is the inequitable feature which has caused courts to sometimes hesitate to sustain them as against innocent purchasers; and because the appellant has eliminated this inequitable feature from this case, in the interest of fairness, it would be very inequitable to decree that it must therefore lose a right which it before had.

Number 12 of the instructions asked by appellant was as follows:

"I further instruct you that the mere fact, if you find it to be a fact, that the defendant accepted payment of money upon this contract after maturity, and after the said Humphrey & Hamilton, or their successors in interest, were in default, is not such act or conduct on the part of the defendant as would constitute either an expressed or implied waiver by the defendant of the terms of its lease or contract, or of its right to resume or take possession of said property.   A mere lapse of time after default of the said Humphrey & Hamilton, or their successors in interest, before the defendant resumed and took possession of said property would and does not constitute a waiver of its title and right to the possession of said property."

This instruction was refused by the court, and the following given in its stead:

"I further instruct you that the fact, if you find it to be a fact, that the defendant accepted payment of money upon this contract after maturity, and after the said Humphrey & Hamilton, or their successors in interest, were in default, is such act or conduct on the part of the defendant as would constitute either an express or implied waiver by the defendant of the terms of its lease or contract, and of its right to resume or take possession of said property, and to forfeit the payments made by the plaintiff's assignor."

We think the instruction asked by the appellant correctly stated the law, and should have been given, and that the instruction of the court, which was the exact reverse, was not the law. The extention of the time after the money became due was purely an act of grace on the part of the appellant, which was in respondent's interest, he was in no way misled by it, and could in no way be injured by it, and we are at a loss to know on what principle of either law or ethics appellant could be held to lose a right by extending the time of payment to its debtors.

We have examined all the authorities cited by respondent on the subject of waiver, and none of them sustain his contention. Nor do we think that any case can be found which does sustain it. There are some cases which hold that where part payments have been made, that the vendor must allege and prove demand of the balance due before he can take possession, but in this case the demand is alleged, and testimony was offered to sustain the allegation. Whether this testimony was sufficient, was a question for the jury. In this case on all the material propositions the testimony was conflicting, and it was for the jury to determine whether the parties acted under the lease, or under some subsequent contract, and if the jury found that they acted under the lease (under the testimony they could have

found either way on this proposition), the appellant under the instruction of the court would be deprived of any benefit of such finding, for the jury would be compelled to return a verdict for the plaintiff any way, as it was admitted that payments had been made and accepted after the time stipulated for the forfeiture to take effect.    The modification made by the court to instruction number thirteen asked by appellant is subject to the same objection.

The following instruction of the court, viz.: "If the jury believe from the evidence that after the contract, called the lease, was signed, that the defendant refused to deliver the machinery to Humphrey & Hamilton thereon, and that a new arrangement was made, changing the terms or conditions of the contract, and that the machinery was turned over under such subsequent arrangement, then you should find for the plaintiff," was entirely too sweeping.    Whether the plaintiff should recover or not would be altogether owing to what the new arrangement was.    The next instruction, on page 184, is objectionable on the same grounds.

The instruction that if the defendant insured the machinery in controversy in the name of Humphrey & Hamilton it was *prima facie* evidence that Humphrey & Hamilton were the owners of the property insured is, we think, erroneous.    Humphrey & Hamilton were conceded to be in possession, and that was sufficient, we think, under all the authorities to give them an insurable interest.

For the reasons assigned the judgment is reversed, with instructions to grant a new trial in accordance with this opinion.

ANDERS, C. J., and HOYT, SCOTT and STILES, JJ., concur.