[No. 3402. Decided May 14, 1900.]

RICHARD D. BAKER *et al., Respondents,* v. HENRY P. SIN-CLAIRE *et ux., Appellants.*

MECHANICS' LIENS—PROPERTY SUBJECT.

Where a person causes the erection of a building upon lands in which he holds less than a fee simple title, only his interest in the lands can be subjected to the liens of persons performing labor upon, or furnishing materials to be used in, the construction of such building, under Bal. Code, § 5901.

SAME—PRIORITIES BETWEEN LIEN CLAIMANT AND MORTGAGEE.

Where the legal title to real property is retained by the vendor to secure payment, the relation of the vendor and purchaser to the property is in the nature of that of mortgagor and mortgagee; and where a mechanic's lien is subsequently incurred against the premises by the purchaser, while the legal title stands of record in the vendor's name, it is subordinate to the interests of the vendor, under the terms of Bal. Code, § 5903, which provides that liens for labor and material are preferred to any lien, mortgage or incumbrance which may attach subsequently to the time of the commencement of the performance of

the labor, or the furnishing of the materials, for which the right
of lien is given, and also, to any lien, mortgage or incumbrance
which may have attached previously to that time, but which
was not filed or recorded so as to create constructive notice, and
of which the lien claimant had no notice.

Appeal from Superior Court, King County. — Hon.
WILLIAM HICKMAN MOORE, Judge. Modified.

*Preston, Carr & Gilman,* for appellants.

*Allen & Allen,* for respondents.

The opinion of the court was delivered by

FULLERTON, J.—In the summer of 1897 the defendant
Charles Watson and one C. J. Smith, being desirous of
purchasing certain real property situated in the city of
Seattle, applied through Watson to the appellant Henry
P. Sinclaire, who is a resident of the state of New York,
to advance them the money for that purpose. The nego-
tiations resulted in the purchase of the property at the cost
of $4,000. Sinclaire took the title in his own name, and
entered into a contract with Watson and Smith, by which
he agreed to convey the property to them on the payment
to him of the purchase price, with interest at six per cent.
per annum. Watson and Smith divided the property be-
tween themselves, Smith taking the easterly portion,
agreeing to pay of the purchase price $2,500, and Watson
the remainder at $1,500. Sinclaire acquiesced in this ar-
rangement, and when Smith paid to Watson for him the
purchase price of Smith's portion of the property he exe-
cuted a deed to Smith for that portion. On December 4,
1897, and prior to the time Smith had made the payment,
Watson wrote to Sinclaire, saying:

"Mr. C. J. Smith will pay me on January 1st, 1898,
$2,500 and interest, and he is very anxious to commence
building at once; of course it would be an advantage to
build with him, as he can get material at very low figures.

I am not ready, however, with the money to build, and unless you are willing to loan me the $2,500 (when Smith pays it in) at the same rate of interest as we have been paying, I will wait until later.  I would hardly ask you to do this, for I know ordinarily no man would loan so much on one piece of property.  It will save me money to build with Smith, but if you do not think it best will wait until later.  .  .  .  Write me just what you think about this matter of building, as I will be guided by what you write.  My idea is to build for twenty-five hundred dollars."

The record does not disclose Sinclaire's answer to this letter, but it appears that he agreed that Watson might retain the money paid by Smith, and that on the 31st day of December, 1897, he entered into a new contract with Watson by which he agreed to convey to Watson what re-mained of the property on condition that Watson would pay him the sum of $4,000 on September 1, 1902, with interest at six per cent. per annum, payable semi-annually. The contract was in writing and contained a promise on the part of Watson to pay to Sinclaire the sum named at the time mentioned.  It also provided that all improve-ments placed upon the premises should remain thereon, should be kept insured against fire in such sum as Sin-claire should specify, that Watson should punctually pay all taxes and assessments that should lawfully be imposed on the property, and, in case of failure on the part of Watson to make the payments as in the contract specified, the contract should become null and void, and the right of possession and all equitable and legal rights in the prem-ises, together with all the improvements and appurtenances, should revert to Sinclaire.  Watson thereafter entered into a contract in his own name with the defendant C. L. Cornwell for the erection of a dwelling house upon the real property at the agreed price of $1,932.  Cornwell pro-ceeded with the erection of the building, and in course

thereof purchased of the respondents, Baker & Richards, certain materials for which he failed to pay. Baker & Richards presented the bill to Watson, who paid a part thereof but refused to pay the remainder. They then filed a lien upon the building and lot, and brought the present action to foreclose the same. The trial court adjudged that the lien attached to the interests of both Watson and Sinclaire in the property, and entered judgment accordingly.

This court has uniformly held that where a person causes the erection of a building upon lands in which he holds less than a fee simple title, only his interests in the lands can be subjected to the liens of persons performing labor upon, or furnishing materials to be used in, the construction of such building. *St. Paul & Tacoma Lumber Co. v. Bolton,* 5 Wash. 763 (32 Pac. 787); *Mentzer v. Peters,* 6 Wash. 540 (33 Pac. 1078); *Iliff v. Forssell,* 7 Wash. 225 (34 Pac. 928); *Miles Co. v. Gordon,* 8 Wash. 442 (36 Pac. 265); *Masow v. Fife,* 10 Wash. 528 (39 Pac. 140). This is also the rule of the statute. Bal. Code, § 5901. It seems clear that the defendant Watson was the person who caused the building to be constructed which gives rise to the present action, and under the rule of these cases, as well as the statute, only his interests in the real property could be subjected to the lien of the respondents.

The statute further provides that the liens created by the chapter giving mechanics and material men liens upon real property, are preferred only "to any lien, mortgage or other incumbrance which may attach subsequently to the time of the commencement of the performance of the labor, or the furnishing of the materials for which the right of lien is given" by that chapter, or to such liens, mortgages, or other incumbrances which may have at-

30—22 WASH.

tached previously to that time, but which are not filed or recorded so as to create constructive notice, and of which the lien claimant had no notice. Bal. Code, § 5903. The contract above mentioned created the relation of debtor and creditor between Watson and Sinclaire. Their relation to the real property was in the nature of that of mortgagor and mortgagee. They stood in the same relation to it as they would have stood had Sinclaire conveyed the property outright to Watson, and taken a mortgage back as security for the purchase price. "There can be no sensible distinction between the case of a legal title conveyed to secure the payment of a debt and a legal title retained to secure payment." Jones, Liens, § 1108. See, further, *Shelton v. Jones,* 4 Wash. 692 (30 Pac. 1061); *St. Paul & Tacoma Lumber Co. v. Bolton, supra.* This being the relation of the parties, the provisions of the statute subordinate the lien of the respondents to the interests of the Sinclaires in the property.

The cases of *Kremer v. Walton,* 11 Wash. 120 (39 Pac. 374, 48 Am. St. Rep. 870);*Id.,* 16 Wash. 139 (47 Pac. 238); and *Bell v. Groves,* 20 Wash. 602 (56 Pac. 401), are relied upon by respondents as sustaining the judgment of the trial court. The distinction between the rule announced in those cases, and the rule announced in the cases above cited within which the present case falls, is clearly pointed out in the *Stetson-Post Mill Co. v. Brown,* 21 Wash. 619 (59 Pac. 507, 75 Am. St. Rep. 862), and it is unnecessary to repeat the argument here.

The judgment is reversed and the cause remanded, with instructions to so modify the judgment as to subordinate the lien of the respondents to the interests of the appellants.

GORDON, C. J., and DUNBAR, ANDERS and REAVIS, JJ., concur.