[No. 18397. *En Banc.* February 16, 1925.]

## CORA J. ASHFORD, *Respondent,* v. JOHN L. REESE, *Appellant.*[1]

VENDOR AND PURCHASER (31)—EXECUTORY CONTRACT—TITLE—DE-
STRUCTION OF PROPERTY—LIABILITY OF VENDEE. Since, in this state,
an executory contract for the sale of real estate creates no title,
legal or equitable, in the vendee, upon the loss by fire of improve-
ments constituting part of the consideration, the vendee may rescind
for failure of consideration and recover the purchase money paid.

SAME (58)—RESCISSION BY PURCHASER—RIGHT TO RESCIND—DE-
FAULT IN PAYMENTS. The vendee in an executory contract for the
sale of real estate is not in default, precluding a rescission by him
on loss by fire of improvements constituting part of the considera-
tion, where the vendor had not taken advantage of a provision in the
contract that, if payments were not promptly made, he could forfeit
the contract by giving thirty days' notice.

TOLMAN, C. J., BRIDGES, and PARKER, JJ., dissent.

Appeal from a judgment of the superior court for
Pierce county, Clifford, J., entered June 29, 1923, upon
findings in favor of the plaintiff, in an action for res-
cission, tried to the court. Affirmed.

*P. L. Pendleton,* for appellant.
*Anthony M. Arntson,* for respondent.

MACKINTOSH, J.—In September, 1919, the appellant
contracted to sell and convey to the respondent a lot
in the town of Ashford, together "with all improve-
ments thereon," the improvements consisting of a
building and constituting approximately three-fourths
of the value of the property. The purchase price was
to be $800, payable at the rate of $20 a month, with
interest, the purchaser also to pay the taxes. The con-
tract was the ordinary executory conditional contract
and provided that, in case the purchaser should fail

[1]Reported in 233 Pac. 29.

to make the payments provided, within thirty days after notice thereof in writing, the seller would have the right to declare the contract null and void. Upon all payments being made, the contract provided that the seller should give "a deed conveying said premises in fee simple with full convenants of warranty."

The improvements were totally destroyed by fire in November, 1920, without the fault of either party. At the time of the fire, the respondent had paid $420 on the contract and approximately $80 in taxes. The appellant refusing to replace the improvements, the respondent brought this action to recover the amount that she had paid under the contract, on the ground of failure of consideration. To this complaint appellant counterclaimed, asking judgment for the balance due on the contract.

The principal question is whether the respondent is entitled to rescind the contract on the ground of failure of consideration arising from the destruction of the subject-matter.

Many cases are cited from other jurisdictions holding that, under an executory contract of sale, where the property is destroyed without fault of either party, the loss must fall on the vendee. But in those jurisdictions it will be noticed the courts have given a different effect to such executory contracts than that given by this court. In such jurisdictions it had been held that the executory contract of sale created some title or interest in the vendee, either legal or equitable, and that the loss must follow the title or interest; whereas we have consistently held in numerous cases that an executory contract of sale in this state conveys no title or interest, either legal or equitable, to the vendee, and the loss following the title, it must be borne by the vendor. The same result obtains upon the theory that

the vendee can recover because of failure of consideration.

It is unnecessary to catalogue the cases in which this position has been stated. They have been summarized recently in the case of *Schaefer v. Gregory Co.*, 112 Wash. 408, 192 Pac. 968. On the authority of those cases, therefore, it must be held that the respondent was entitled to recover, unless there is something in the appellant's contention that the respondent, being in default, cannot take advantage of the situation to rescind the contract. An examination of the record, however, does not disclose that there is any merit in the appellant's contention that the respondent was in default. Under the terms of the contract, if the payments were not promptly made, the appellant could take advantage of this fact only by giving thirty days' notice, and the record here shows that no such notice was given, and furthermore, that if any default was made by the respondent it occurred after the destruction of the improvements, which relieved the respondent from making the payments called for. For the reasons stated, the judgment is affirmed.

FULLERTON, MITCHELL, HOLCOMB, and MAIN, JJ., concur.

ASKREN, J. (concurring)—I concur in the foregoing opinion because it follows the previous decisions of this court, although a review of them convinces me that the principles announced therein were not strictly logical nor in harmony with what seems to me the better authority. If this were a new question I should not hesitate to dissent. But the rule being adopted, and the bar of the state having advised their clients thereunder, we should be slow to overrule it. Especially is this true where, knowing the rule, parties can by contract protect themselves as to the loss. The rule

itself is not bad, although the reasons which led to its adoption were. The continuance of the rule can work no great hardship, although its first announcement may have because of rights which had arisen prior thereto. It is of the utmost importance that we should adopt a proper rule when the question is first presented; but it is hardly of less importance that stability should attach to our decisions and not require litigants to appeal to this court to determine whether our previous decisions are still the law. I therefore concur.

TOLMAN, C. J. (dissenting)—I cannot agree that, at the time of the fire, the purchaser had no interest in the property, nor that the loss should fall on the vendor. I concede that in the case of *Schaefer v. Gregory Co.*, 112 Wash. 408, 192 Pac. 968, this court held that a purchaser under an executory contract of sale of real estate does not acquire any title, legal or equitable, nor any interest, legal or equitable, in the property covered by the contract. I cannot understand how it can be logically said that one who has paid any portion of the purchase price, either great or small, has no manner of interest in the property which he is purchasing. If he have no interest for what has he been paying his money? How can he protect himself against sales made by a vendor, if he have no interest? The recording of his contract will avail him nothing because, having no interest in the real estate, the contract evidences no interest and is not entitled to be recorded, and consequently cannot be constructive notice to anybody. If this be so, then the purchaser must, in spite of all he can do, find himself in a position where the vendor may sell the property to an innocent purchaser (innocent because there is no method of giving him notice), and the vendee in the original con-

tract be left with only a claim for damages against his vendor, which he may or may not be able to enforce.

We have held that such a purchaser may insure the property and enforce his contract of insurance. *Quinn v. Parke & Lacy Machinery Co.*, 5 Wash. 276, 31 Pac. 866. But if he have no manner of interest, what has he to insure? It is well known that it is the common practice of insurance companies to issue policies of insurance to the vendee, particularly under conditional sales contracts with reference to personal property. If the purchaser have no interest in the property, how can such insurance be enforced? There can be no substantial difference between the rights of the respective parties under a conditional contract for the sale of personal property and a conditional or executory contract for the sale of real estate, especially where in either case possession passes to the purchaser. If the purchaser obtains no interest in the one, he obtains no interest in the other.

As I see it, it is high time that this court should bring itself into harmony with the settled law of the land as recognized and enforced from the early days of the common law in all jurisdictions where the common law obtains.

There is and can be no dispute that the doctrine for which I am contending is a common law doctrine of long standing. Mr. Pomeroy in his work on Equity Jurisprudence, vol. 5, p. 5050, says:

"Lord Eldon, in *Seton v. Slade*, states the result of the contract to purchase land thus: 'The effect of a contract to purchase, is very different at law and in equity. At law the estate remains that of the vendor; and the money that of the vendee. It is not so here. The estate from the sealing of the contract is the real property of the vendee. It descends to his heirs. It is devisable by his will; and the question, whose it is, is not to be discussed merely between the vendor and

vendee; but may be to be discussed between the representatives of the vendee.'

"The rights of the heir and representatives of the vendor and vendee, on the decease of either before title has passed under a valid contract to convey lands, follow directly from the fundamental principle of equity, that 'in equity, upon an agreement for the sale of lands, the contract is regarded for most purposes, *as if already specifically executed.* The purchaser becomes the equitable owner of the lands, and the vendor of the purchase-money.' In working out the testamentary rights of the heir and representatives as to the land under the contract for sale, equity considers these rights as if the title to the land had actually passed before the death of the vendor or the vendee. 'Although the purchase-money is unpaid, (if) the contract is valid and binding, it has this remarkable effect, that it converts the estate, so to say, in equity; it makes the purchase-money a part of the personal estate of the vendor, and it makes the land a part of the real estate of the vendee.

"Thus, where the vendee dies, having a contract for lands, but the conveyance has not yet been made to him, the vendee's interest in the lands 'shall be considered as real estate and descend to his heir, or he may devise them by will, and his representatives shall pay the purchase-money out of the assets.' The heir or devisee of the vendee in equity can compel the executor or administrator to pay the unpaid purchase-money out of the personalty, for equity regards the transaction as completed, and a conversion to have been made of that much of the vendee's personalty from the date of the contract.

"In the case of the vendor's death, where he is under contract to sell lands, his heir receives the title in trust for the vendee, and must convey upon payment of the purchase-money. But the purchase-money goes not to the heir, but to the personal representative, of the vendor, for the vendor's interest had been 'converted' by the contract from realty into personalty. The executor of the vendor can bring suit for specific performance of the contract, and compel the

purchaser to pay the purchase price, and joining the heir, compel him to convey the land to the purchaser; the executor holding the proceeds as personalty for those entitled.   .   .   .

"But the contract must be valid and enforceable at the time of the death of the testator in order that the equitable character of the estate shall prevail over the legal, i. e., that there shall be in equity a conversion, as, of the vendor's interest in the land into personalty.

"As an illustration of this principle, the question of title is very important. Not only must there be a good contract from the legal point of view of consideration, but if the vendor could not make a good title, equity would not decree specific performance, and there is no conversion. Then the vendor's interest at his death is land, and the vendee's interest is personalty, notwithstanding the contract. Lord Hardwicke stated the rule: 'when an ancestor, after the making of a will, agrees for the purchase of particular lands, the heir at law would have a right to them, provided a good title can be made out, *otherwise if it cannot.*' And the heir of the vendee cannot have the money laid out in other lands. The interest is then only personalty. But the fact of the purchaser being able to pay or not able to pay is immaterial; if there is a valid contract, the conversion is effected.   .   .   .

"Enforceability of the contract at the time of death of one of the parties refers to the validity of the contract and not to events in the nature of conditions which may not have been performed because such performance was not due at the time of the death of testator. It is sufficient if these conditions are performed by his representatives. Provisions of the nature of conditions in contracts of sale do not alter the rule that the contract of sale is an equitable conversion of the realty into personalty. ..   .   .

"Upon whom should the loss, where the buildings are destroyed by fire, occurring between the date of the contract and the conveyance, fall? Following out the rule of equity that 'as soon as the contract is finally *concluded,* although it is wholly executory in form,'

there results by its operation an equitable conversion of the land and the purchase-money, and the purchaser then becomes the equitable owner of the land, the conclusion can hardly be escaped that the loss should fall on the vendee. Of course the risk of loss by special stipulation can be placed on either party; as where the vendor by his contract was to complete a certain building before vendee's taking possession, the inference is that the loss would fall on the vendor. Equity, from the moment the contract is binding, gives the vendee the entire benefit of the rise in value of the land and of all subsequent improvements, and any other advantage that may accrue to the estate. If the vendee is owner in equity so as to receive all increment, he should be considered owner so as to accept the burden of any loss not due to the vendor's fault.''

Since from early territorial days the common law, so far as it is not repugnant to or inconsistent with the constitution and laws of the United States, the organic act and laws of Washington Territory, or incompatible with the institutions and conditions of society in this state, is by statute made the rule of decision of all of the courts of the territory and state of Washington (§ 1, Code of Procedure of 1881; ch. 17, Laws of 1891, p. 31), we have only to inquire whether our statutes have made any change in the law upon this subject, and as I find no such amendatory statutes, whether this court has itself legislated upon the subject and repealed or amended by its decisions the common law as hereinbefore cited from Pomeroy's Equity Jurisprudence. Let us then examine the various decisions on this subject which seem to affect the subject in hand.

The first case I find is that of *Shelton v. Jones,* 4 Wash. 692, 30 Pac. 1061. There the court said:

''The equitable lien of a vendor is often confused with the security which the vendor preserves to himself by retaining in himself the legal title until the

payment of the purchase money. This has been done in this case. The legal title to the property never passed, the instrument which created the relations which existed between the parties being only a bond or agreement for the sale of the property at a future day on payment of the notes given for the purchase price. A vendor's lien is one which is created by operation of law as an equitable security to the seller of the land. The lien which exists in this case, if any, is only one of contract and the vendor retaining the legal title has a right to and in the land under which he might have maintained ejectment for the recovery of possession. He might have sued at law on the notes given for the purchase money, or he might seek to foreclose it in equity as he has done, or might even pursue these remedies concurrently.''

In *St. Paul & Tacoma Lumber Co. v. Bolton,* 5 Wash. 763, 32 Pac. 787, it was said:

"Under the authorities, and in accordance with the rules of common sense, Bolton and wife [the vendors] stand in the same relation to this land and with Shannon and Cantara [the vendees] as if they had bought the land outright and taken a mortgage back for security. The bond is simply a different form of security which some people prefer to a mortgage; but its object is the same, and in equity the parties stand in exactly the same position, relatively, as if they had taken the other form of security.

" 'There can be no sensible distinction between the case of a legal title conveyed to secure the payment of a debt and a legal title retained to secure payment.' Jones on Liens, § 1108.''

In *Reddish v. Smith,* 10 Wash. 178, 38 Pac. 1003, 45 Am. St. 781, the question involved was whether or not the vendor, under an executory contract which provided for a forfeiture on default, could retain the purchase money already received by him, on declaring such a forfeiture. The court upheld the right to declare a forfeiture and to retain the money. There was

no discussion of the title, nor of the interest acquired by the vendee under the contract, and I find nothing therein which makes it an authority for the later decisions hereinafter referred to, in which it is cited.

*Pease v. Baxter,* 12 Wash. 567, 41 Pac. 899, holds that such a contract is a contract of conditional sale and not a mortgage, and that therefore it can be forfeited and need not be foreclosed as a mortgage.

In *Churchill v. Ackerman,* 22 Wash. 227, 60 Pac. 406, the court said:

"The substance of the instruction is that if the defendant's contract to purchase had been forfeited, and the plaintiff had a subsequent contract of purchase, then the plaintiff should recover; and this raises directly the proposition as to whether a plaintiff can maintain an action for the value of crops grown and matured prior to his possession of the land on which said crops are grown. The law is to the effect that he cannot, even where his title to the land is unquestioned. Much less would he be enabled to do so where he holds simply an executory contract, such as is held by the plaintiff in this case, which might, or might not, ripen into a title. And that such a contract as this is executory and conveyed no element of title, but could be forfeited upon violations of its conditions, see *Reddish v. Smith,* 10 Wash. 178, (38 Pac. 1003, 45 Am. St. Rep. 781); *Pease v. Baxter,* 12 Wash. 567, (41 Pac. 899)."

Here, manifestly, by an unfortunate expression in no wise called for by the decision of the points in issue, and wholly unsupported by the authorities referred to to sustain it, the foundation was laid for what afterwards followed. The words "conveyed no element of title" were unfortunate and have been misconstrued, and it is high time that the error should be corrected. That this expression was not then taken as changing the common law is evidenced by the next case considered, that of *Baker v. Sinclaire,* 22 Wash. 462, 61 Pac.

170, in which case it was held that a materialman's lien would attach only to the vendee's interest in the land, and the doctrine announced in *Shelton v. Jones,* and *St. Paul & Tacoma Lumber Co. v. Bolton, supra,* was reaffirmed.

And in *Olson v. Seattle,* 30 Wash. 687, 71 Pac. 201, which shortly followed, this court, speaking through Mr. Justice Fullerton, said:

"The right of possession alone of real property is a sufficient interest therein to enable a person having such right to invoke the remedies provided by law against a trespasser thereon; and one holding real property under contract of purchase with the owner, and who has paid a substantial portion of the purchase price, has such an interest therein as will entitle him to compensation before the property can be taken or damaged for a public use. His right to compensation is not affected by the fact that his interest is less than the whole, so long as it is substantial, and the taking of the property affects that interest."

In *Johnson v. Sekor,* 53 Wash. 205, 101 Pac. 829, the question presented was as to whether or not a judgment became a lien upon the interest of the vendee under an executory contract to purchase real property. The purchaser had not taken possession; in fact, the land was vacant and unoccupied, the contract provided for forfeiture in case of default, and the court there held that the judgment did not become a lien upon the interest of the vendee under the executory contract, but cited no authority for that holding. However, it is fair to point out that in that case the contract had been forfeited prior to the levy of the execution, and the interest of the vendee in the property had ceased to exist, so that the result arrived at was probably correct. It is manifest that, up to this point, all that the court was trying to do was to enforce the forfeiture feature of such contracts. Perhaps it sought an easy

and incorrect method of doing so, but I think the purpose is manifest that it intended to go no farther than to recognize a forfeiture declared in accordance with the terms of the contract. Some language is used in the decision last referred to which is again unfortunate. It is there said:

"It is plain under these facts, which are undisputed, that the appellant has no interest in the property. The title never was conveyed to Cory. He did not have possession. He had a contract for purchase merely. This contract provided that time was of the essence of it and, if payments were not made as agreed, it might be forfeited without notice. It was forfeited after notice for failure to perform by Cory. At the time of its forfeiture, Cory was notified and declined to finish the payments. The interest of the judgment creditor was no greater than that of the judgment debtor. No levy was made upon the lots or of Cory's interest therein while the contract was alive and capable of being enforced. Appellant waited until after the contract was forfeited and Cory's interest gone before he attempted to levy upon the property. After forfeiture, Cory himself could not restore his interest without the consent of the other party to the contract, and it follows, of course, that one holding under Cory could not do so."

It is plain, I think, that this language, when limited to the case then under consideration, means only that the rights of the vendee were forfeitable, and that he did not have an equity similar to that of a mortgagee which could be extinguished only by foreclosure.

In the case of *Younkman v. Hillman*, 53 Wash. 661, 102 Pac. 773, where again an executory contract was under consideration, the court said:

"It is apparent that the only question of law involved in this appeal is, Were the plaintiffs purchasers? Broadly speaking, a purchaser is one who acquires title otherwise than by descent; but in its generally accepted meaning it refers to the acquisition of property for a valuable consideration. The

contract entered into between the parties hereto was in no sense a transfer of the title. Appellants divested themselves of no rights nor interests in the property, except possession and those rights incident to possession. Their contract was to convey by a good and sufficient deed upon respondents' compliance with all the terms and conditions to be by them performed. There is no language in the contract that can be interpreted into a present sale. The terms adopted by the parties to express their intention are: 'party of the first part will sell;' 'party of the second part will purchase'; and these agreements are to be performed upon full compliance with other and attendant agreements. The whole tenor and effect of the contract is clearly in contemplation of a future and not a present sale. Such contracts have invariably been held to be contracts for title or agreements to convey, not ripening into even an equitable title until the vendee has placed himself in such a position by performance that he can compel a conveyance.''

The authorities relied upon for this pronouncement were all from other states, and if any of them can be said to support the position there maintained, they are not binding on us, are out of harmony with the common law and with the great weight of authority wherever the common law is known.

In *Taylor v. Interstate Investment Co.*, 75 Wash. 490, 135 Pac. 240, Judge Ellis, speaking for the court, said:

''The appellant's theory of the action, as shown by her complaint and argument, is that the transaction evidenced by the bond for deed, the admitted first payment, and the two notes, was an agreement to sell but not a presently operative sale. On the other hand, the respondents claim that the transaction was a sale, and that the legal title was retained by the vendors merely as a security for the payment of the notes. The bond itself covenanted for an immediate and unqualified delivery of possession by the vendors to the vendee, authorized sales of the property, or any part of it,

by the vendee, contained no provision for a forfeiture in case of nonpayment of the balance of the purchase price, and did not declare time of the essence of the contract. Clearly the transaction was a sale, with a retention of title by the vendors as a security. The relation of the parties was in equity analogous to that of mortgagor and mortgagee. Though the legal title never passed, equity will regard the vendee as having acquired the property in the land, and the vendor as having acquired the property in the price." Citing Pomeroy, and *Baker v. Sinclaire, supra,* and many other authorities. He then proceeds:

"Under the foregoing authorities, it is plain that the vendee acquired the full equitable title, as against the vendors, and that the bond created an equitable mortgage securing the unpaid balance of the purchase price."

It may be pointed out that because the bond for a deed there considered contained no forfeiture clause, and gave the power of sale, though none the less an executory contract, it was to be considered as an equitable mortgage. This is further evidence of the fact which I have heretofore pointed out, that the only purpose of the court in the earlier decisions was to give effect to the forfeiture clause in such contracts.

We now come to the case of *Tieton Hotel Co. v. Manheim,* 75 Wash. 641, 135 Pac. 658, where, in an opinion signed by four judges, five others concurring in the result, this court seems for the first time to have adopted as the law the erroneous expressions which had theretofore been indulged in as dictum. In the *Manheim* case it appears that one Lee entered into a contract for the sale of certain lots to William Manheim. A small part of the purchase money was paid in cash. The contract provided for the payment of the balance on or before May 9, 1906, a deed to be executed and delivered when final payment was made. The contract contained the usual provision for forfeiture in case of

default. Manheim was a married man when he entered into the contract, and thereafter on February 1, 1906, before the maturity of the final payment, his wife died. After her death, Manheim made default, and was served with notice of forfeiture, admitted the default, and in writing recognized the forfeiture and agreed to surrender the possession of the premises. This writing was filed for record. The children of Manheim and his deceased wife, who were her heirs, asserted an interest in the property, and the action was brought to quiet title as against their claims. In that case the court repeated the quotation from *Churchill v. Ackerman,* *supra:* ''Such a contract as this is executory and conveys no element of title, but could be forfeited upon violations of its conditions,'' and then proceeds to discuss the other previous Washington cases which we have just been considering, and the writer of the opinion concludes: ''It is, therefore, plain from our previous holdings upon contracts of this character that, until the contract was performed, no title, either legal or equitable, passed from the vendor to the community; and that, upon the failure of the Manheims to comply with the terms of the contract, no interest whatever in the property was vested in the Manheims, or in anyone claiming through them.'' So by less than one-half of the judges of this court the common law was swept aside.

From this point the descent into the abyss of error was speedy and complete.

*Converse v. LaBarge,* 92 Wash. 282, 158 Pac. 958, quotes extensively from the Manheim case and expressly follows it. Again, in *Schaefer v. Gregory Co.,* 112 Wash. 408, 192 Pac. 968, the error, which was originally inadvertent, was again buttressed and reinforced, but without re-examination of the subject or of the authorities. So then, in fact, the *Manheim* case

is the only case in which this question was really examined and considered, and it was there examined and considered, but not from the standpoint of the common law as it has existed for centuries, and what was actually decided in our previous cases, and consequently the judgment arrived at was rested upon what I have attempted to show were unfortunate expressions amounting in no case to anything more than mere dictum. While the doctrine of the *Manheim* case is again referred to by the citation of *Schaefer v. Gregory Co., supra,* in *Casey v. Edwards,* 123 Wash. 661, 212 Pac. 1082, it is only for the purpose of distinguishing the case then under consideration, and therefore that case is not in point. If I have overlooked any cases from this court bearing on this question, I am confident that they would not change the situation.

I cannot refrain from saying in closing what in effect has already been said, that there is a wide difference between having the legal title to real property and having no title or interest therein. A purchaser under an executory contract, whether he be in possession or not, and without reference to the amount of the purchase price he has paid, must, in the very nature of things, have an interest in the property which equity will recognize, otherwise he cannot be protected by his possession, since he has no interest of which possession is notice. He cannot be protected by the recording statute, because, again, he has no interest, and no attempted notice of what does not exist can be held to have any effect. To deny this doctrine is to deny one of the cardinal principles of equity, and having done that, the whole doctrine of equitable conversion, equitable mortgages and equitable interest is rendered illogical in this state and subject to denial on authority at any time. Though the purchaser occupies the property as his home, he may not, by

homestead declaration, secure its use to his dependent family, and in the event of his death, there is no interest to descend to his heirs, no estate which can be set over to the surviving widow; and, in fact, if the doctrine of the *Manheim* case is to obtain, from beginning to end the purchaser under such a contract has only a right *in personam* against the vendor, which must, in many cases, prove wholly inadequate. We have gone wrong, very far wrong. It may be said that the rule of the *Manheim* case, though wrong, has become a rule of property and may not be disturbed. To this I cannot agree. What the court has said up to this time has not been accepted as final by those dealing with real estate titles, and careful practitioners everywhere have in practice recognized an equitable interest in the purchaser under contract. If any harm at all shall result from now announcing the correct rule, it can only be of a minor nature, because in all cases the purchaser in default, even though his contract has not been forfeited, must tender the purchase price before he can assert his interest.

The only protection which can be afforded to those who would otherwise be helpless lies in overruling the *Manheim* case and those cases based upon it, and returning now to the safe doctrine based upon the experience of mankind for centuries, by which alone the purchaser under an executory contract may be protected in his rights. The vendor of real property can always protect himself. The vendee in many, if not most cases, is wholly unable to do so; and notwithstanding that the application of this rule would, in this particular case, cast the burden upon the vendee, yet the rule must obtain for the protection of the many who are otherwise without any adequate protection.

In my labor upon this case I have been greatly assisted by a paper entitled "Property Rights of Vendor

and Vendee under Executory Contracts for the Purchase of Real Estate,'' prepared by a young but already eminent member of the Yakima County Bar, and recently read before a meeting of the Bar Association of Yakima county; and the very great importance of the principle involved has led me to make use of every assistance at my command.

For the reasons indicated, the *Manheim* case and those which follow it should be overruled, in so far as they announce the law to be that a vendee under a contract of this nature acquires no interest in the property or element of title thereto, and the judgment appealed from in this case should be reversed.

BRIDGES, J. (dissenting)—Since the majority of the court is of the opinion that the determination of this case depends upon the location of the title at the time of the destruction of the property, and it has become a question whether we will affirm or abandon our previous cases on this subject, I concur in the views expressed in the dissenting opinion of Judge Tolman. If I were left to decide this case according to my own inclination, I would hold that the location of the title has nothing to do with who should bear the loss, and consequently it would not be necessary to discuss our cases on that subject. I would dispose of the case on the theory that the respondent having unconditionally agreed to pay the purchase price, she must do so regardless of the destruction of a part of the improvements on the real estate. My views on this question are more fully set forth in the case of *Holt Manufacturing Co. v. Jaussaud, post* p. 667, 233 Pac. 35. For the reasons here and there given, I dissent.

PARKER, J., concurs with BRIDGES, J.