[No. 21356. Department One. October 18, 1928.]

ALLEN T. OLIVER et al., Respondents, v. T. S. McEACHRAN et al., Appellants, HENRY J. SCHNEIDER et al., Defendants.[1]

*Henderson, Carnahan & Thompson,* for appellants.
*J. W. Quick,* for respondents.

TOLMAN, J.—This is an action to establish an easement for a right of way, to recover possession, and for damages suffered by exclusion therefrom. From a judgment favorable to the plaintiffs, the defendants McEachran and wife have appealed.

[1] Reported in 271 Pac. 93.

It appears that, in 1917, defendants Schneider were the owners of lots nine (9) to twelve (12), inclusive, in block three (3), Eureka Addition to Tacoma. These lots were each 25 x 120 feet and, taken together, they made a tract of land fronting 100 feet on North 28th street, running thence back 120 feet to an alley, and bounded on the west by Puget Sound avenue.

Schneider, conceiving that to be to his advantage, disregarded the platted lot lines, and of the tract made three lots facing to the west, on Puget Sound avenue, each lot 40 feet in width and 100 feet deep. The two outside lots so created had access at the rear; the southerly lot by means of North 28th street which bounded it on the south, and the northerly lot by the alley, which bounded it on the north, but the center 40-foot lot was cut off from rear access.

Schneider built a house on each 40-foot lot and offered the three properties for sale. The first one sold was the center lot now owned by the respondents. This lot was sold on contract to one Nelson and though the contract was not recorded and could not be produced upon the trial, it is not disputed that it contained apt language to cover an easement, for the benefit of the center lot, over the east 8 feet of the north 40 feet so as to make a driveway connecting the center property with the alley.

Nelson took possession, but never obtained a deed. He parted with his interest to one Bennett who likewise occupied the property as a home for some time. Bennett sold to respondents in August 1919, at which time there was, on the rear of this center lot, a garage facing the 8-foot driveway, the driveway being well defined as will hereinafter more fully appear. At the time of the purchase of Bennett's interest, the respondent secured a new contract from Schneider and wife, direct to themselves, which clearly and in apt

terms grants the easement over the disputed strip. This contract was not recorded.

Respondents, on November 19, 1921, obtained a warranty deed from the Schneiders conveying to them both the center 40-foot lot and the easement over the east 8 feet of the north 40 feet lying between their lot and the alley, which deed was filed for record November 13, 1921. This appears to be the first time the easement was made a matter of record.

In the meantime, and after the contract on the center lot had been made to Nelson, the Schneiders, on January 2, 1918, made an executory contract to the defendant Jacobs covering the north 40-foot lot, in which contract appears this language:

"It is agreed and understood between all parties of this instrument that the East 8 feet of the above described site may be used for driveway purposes by the owner of the property adjoining said site on the south thereof."

This contract was not recorded until October 17, 1927. On September 1, 1919, Schneider and wife, in accordance with the terms of the contract last mentioned, conveyed the north 40 feet to Jacobs by warranty deed, but all reference to the easement was omitted from the deed. This deed was recorded September 23, 1919. On May 14, 1921, Jacobs and wife made an executory contract by which they covenanted to convey the north 40 feet to the appellants, but in this contract no reference whatever was made to the easement, and on February 13, 1926, Jacobs and wife conveyed by warranty deed the north 40 feet to the appellants, still with no reservation or reference to the easement.

It is clear that, as between the Schneiders and Jacobs and wife, the omission to reserve the easement in the deed, as it was reserved in the contract, was entirely unintentional and a mistake. The testimony

makes it clear that the Schneiders had no intention of deeding anything other than what was called for by the contract, and that the Jacobs had no thought or wish of obtaining anything but that which the contract entitled them to. Appellants do not dispute this fact, but seek to rely upon the record as it existed at the time they entered into the contract to purchase from Jacobs or, at the least, at the time they received their deed from Jacobs and wife.

The gist of appellants' contention is based upon the rule of *Ashford v. Reese*, 132 Wash. 649, 233 Pac. 29, that an executory contract to convey real estate vests no title, either legal or equitable, in the grantee, and that therefore neither the contract to Nelson, the assignment to Bennett, or the substituted contract from Schneider to respondents, vested any title to the disputed strip in any of the grantees, the full and complete title remaining in Schneider, notwithstanding the execution and delivery of the contracts, until the deed without reservation by Schneider to Jacobs was made on September 1, 1919. Accepting that premise, the question then arises, Did the deed last mentioned convey the eight-foot strip to Jacobs without limitation or reservation? Surely not, as between the parties, because neither so intended. That being true, the whole question here is, Were appellants innocent purchasers without notice so that they may claim that which their grantor, Jacobs, could not claim?

We think the facts are against them on this question in at least two important particulars. First, the physical facts are all against them. The garage on respondents' property was built facing the end of the disputed strip showing plainly that it could be used only in connection with that strip, and there was evidence on the ground of use of that strip to reach the garage. Jacobs had improved his property which

he sold to appellants with scrupulous care not to encroach upon the easement. His garage, facing the alley, was set back ten feet from the rear or east end of his lot, so that even the eaves would not drip upon the eight-foot strip over which his neighbor had rights. From the garage to his south line, he constructed a concrete retaining wall and improved his grounds on a level elevated some two feet above the disputed strip. Ashes and cinders were placed on the disputed strip to assist in making a suitable roadbed, so that it was evident upon the most casual inspection that the owner of the property to the south claimed the use of the strip, and did use it as his needs required. In other words, he was in possession so far as anyone could be in possession of a drive or roadway, and appellants were bound thereby at their peril to ascertain his rights.

Second, the testimony of Mr. Jacobs and that of the appellant T. S. McEachran leaves no room for doubt that; at least soon after the making of the contract between Jacobs and the appellants, and long prior to the execution of the deed, appellants were sufficiently informed both by Jacobs and by respondent Oliver to put them upon notice; and, of course, since an executory contract conveys no title, either legal or equitable, notice at any time before the Jacobs's deeded to appellants was sufficient. At any rate, the notice came early in the time between the making of the contract and of the deed, and appellants had ample opportunity, then having paid only a portion of the purchase price, to protect themselves, either by a rescission of the contract or a demand for a diminution in the purchase price; so that, since the deed from Schneider to Jacobs did not convey the disputed strip without the reservation as between the parties, neither did it so convey it as to appellants, because they had

notice, and if it was not so conveyed, title at least to the extent necessary to sustain the easement remained in the Schneiders until it was conveyed by them to the respondent by the deed of November 19, 1921.

But appellants, adopting language used by the minority in *Ashford v. Reese, supra,* argue that respondents' possession and claim of right, being based upon no title, gave no notice of any title or right in them. It is true that, under the doctrine of the *Ashford* case, respondents had no title and therefore appellants could have received no notice of what did not, in fact, exist; but neither in the *Ashford* case or elsewhere has this court said that a purchaser in possession under an executory contract has no rights. Undoubtedly such purchaser does have a right of possession and a right to acquire title in accordance with the terms of the contract. Such rights, though not amounting to title, are substantial rights such as one having notice and knowledge is bound to respect. The doctrine of notice is not confined to the protection of titles, but extends to all substantial rights, as a reference to the law of negotiable instruments will clearly show.

Moreover, since both parties claim through Schneider as their common grantor, an element of estoppel is thus presented.

The great weight of authority seems to support these views. 19 C. J. 873; *Forde v. Libby,* 22 Wyo. 464, 143 Pac. 1190; *Van Buren v. Trumbull,* 92 Wash. 691, 159 Pac. 891; *Kalinowski v. Jacobowski,* 52 Wash. 359, 100 Pac. 852; *Field v. Copping, Agnew & Scales,* 65 Wash. 359, 118 Pac. 329; *Karlsten v. Hamel,* 123 Wash. 333, 212 Pac. 153; and *Dennis v. Northern Pacific R. Co.,* 20 Wash. 320, 55 Pac. 210.

The last cited case is remarkably similar upon its facts to the one we are now considering. A contract

was given containing a reservation, a deed was afterwards executed and delivered from which the reservation was omitted, and the parties claiming adverse to the right of way contended that they were innocent purchasers. Among other things, the court said:

"But it is contended by the appellants that, even conceding the mistake to have been such a mistake as could be corrected by a court of equity as between the parties to the contract, the appellants here are not bound by the rule, for the reason that they are innocent purchasers and that, no matter what the equities may be between the railroad company and Dodge, they having bought without notice, their title should be protected, especially inasmuch as the mistake was caused by the action of the respondents. This, to our minds, is a very much more difficult question than the one we have been discussing, and it must be conceded at the outset that, if the appellants were innocent purchasers, their rights could not be in any way affected by any mistake, however flagrant, which was made in making the contract between the original parties. But it seems to us that the law is well established that, where a party is in possession of land, even where the public records show the title to be in someone else, the purchaser cannot rely entirely upon the record testimony, but he must take notice also of the rights of those who are in possession. The doctrine of constructive notice is itself the work of evolution. Actual possession was at one time considered the best and only notice. Symbolical delivery of land by leaf or twig, also, in certain stages of society, met the requirements of justice. But with changing conditions constructive notice by way of registry became necessary for the interchange of real estate. It has never been held, however, to be an exclusive notice, nor to take the place of actual notice."

We conclude that the judgment of the trial court is right and it is therefore affirmed.

FULLERTON, C. J., MITCHELL, PARKER, and BEALS, JJ., concur.